## MATTER OF NGHIEM

### In Deportation Proceedings

### A-10392808

### Decided by Board April 6, 1966

A native and citizen of Viet Nam who has been in the United States since his last admission as an exchange visitor physician in 1958 has not established that because he has been away from his country so long, has refused to return, is American trained and has an American family, he would be subject to persecution within the meaning of section 243(h), Immigration and Nationality Act, as amended, if deported to Viet Nam.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Exchange visitor—remained longer.

Respondent is married, male, 41 years of age, a native and citizen of Viet Nam, who was admitted to the United States on September 5, 1958, as an exchange visitor until September 15, 1962. He was granted until December 23, 1962, to depart, but did not avail himself of the grant. He has conceded deportability and applies for withholding of deportation to Viet Nam pursuant to section 243(h) of the Immigration and Nationality Act, as amended. The special inquiry officer denied this application. Respondent appeals to the Board from the denial. The appeal will be dismissed.

The special inquiry officer has set forth with care the respondent's educational and professional background, and the manner in which he has employed his time since he has been in the United States. He is a doctor and was teaching in the Department of Medicine at the University of Saigon before coming to the United States. He was first in the United States from 1955 to 1956 and attended the School of Public Health, University of Michigan at Ann Harbor, and received a Master of Public Health degree. When he returned to the United States in 1958 he studied at Harvard School of Public Health, and was granted a Master of Science in Teaching. He then attended the Johns Hopkins School of Public Health and was

granted a Doctor of Public Health degree in 1962. He worked in the Department of Environmental Medicine of the Johns Hopkins School of Hygiene as a research associate; that school filed a petition on his behalf for a first preference which was granted by the Baltimore office of the Immigration and Naturalization Service on March 27, 1963.

Respondent pleads that he will be subject to persecution or discriminated against in Viet Nam because he has been away from the country so long and has refused to return. Most of the record goes to his fear of the government of Viet Nam prior to the revolution in that country which occurred on November 2, 1963. Most of the exhibits consist of magazine and newspaper reports on the Diem administration which was overthrown by General Nguyen Khanh. Respondent admitted in his last reopened hearing on May 20, 1965, that he is not well acquainted with the present government, but he believes that there is continued instability in the political parties and in the Vietnamese Government, regardless of the identity of the head of state. He asserts that having an American family places him in a particularly precarious position.

It is our feeling that, since the revolution overthrowing the Diem regime two and a half years ago, at least part of the record regarding political conditions in that country is out of date. It is apparent that respondent has no desire to return to his country to use the special training he has received in the United States for the good of his fellow countrymen. He declares that physicians educated in the United States are discriminated against in Viet Nam in favor of physicians trained in France, and that the dean of the medical school at Saigon had told him personally that no credit could be given for training acquired in this country. This cannot be considered to be evidence supporting a claim of persecution in Viet Nam. Respondent came to the United States first in 1955. When he returned two years later for additional training he must have been fully aware of the government's attitude of discrimination, if it exists, in favor of French trained physicians.

The fact that respondent has attempted to remain in the United States and has delayed his return to his native country as long as possible does not constitute evidence that respondent will be subject to persecution in Viet Nam. If this constituted evidence of persecution, every case coming before the Board would, necessarily, be resolved favorably to the alien. Every person applying for section 243(h) relief from deportation has delayed his departure as long as possible, and must, to some degree, have charged the government in

his native land with repressive tactics; otherwise the appeal would not be before us.

On April 11, 1963, respondent married a United States citizen. One child was born of this union and at the time of his last hearing respondent offered evidence to establish that his wife was again pregnant, and was expecting a second child to be born in August 1965. Respondent's wife has two children by a previous marriage who live with her. Her former husband, one Dr. Lindgren, testified in behalf of respondent at his hearing in May 1963. Dr. Lindgren also served with the United States Public Health Service in Viet Nam. Dr. Lindgren is remarried, and the record establishes that he pays support for his two daughters to respondent's wife, and that relationships between the two families are friendly.

The Department of State, Bureau of Educational and Cultural Affairs, informed the District Director at Baltimore that on February 25, 1965, the Agency for International Development requested the enforced departure of respondent "even though this constitutes an exception to the present Service policy of not requiring departure of section 212(e) applicants pending completion of the study of the Exchange-Visitor Program" (Ex. R-4). The AID memorandum, dated March 13, 1965, is quite lengthy, and makes the following points: (1) that the government of Viet Nam and our mission undertook the training of Dr. Thieu as part of the expansion of medical education facilities badly needed in Viet Nam; (2) that Dr. Thieu signed an agreement to work for the Viet Nam Government for ten years as a member of the faculty of the University of Saigon in return for the advance medical education given him; (3) that Dr. Thieu arrived in the United States under the sponsorship of the World Health Organization on September 5, 1958, that his support was assumed by the Agency for International Development on September 1, 1960, and that his visa support was terminated by that agency on September 15, 1962; (4) that Dr. Thieu was fully aware when he signed these contracts of the requirement of section 212(e) of the Immigration and Nationality Act that he would be required to return to his native land to utilize his training; (5) that Dr. Thieu was not selected for training under the AID program for his personal benefit but for the contribution he could make to the program in Viet Nam; (6) that Dr. and Mrs. Thieu were aware of the fact at the time they married that they would have to choose either two years' separation or that Mrs. Thieu would have to spend two years in Viet Nam in order to be with her husband. It was the opinion of the agencies involved that the respondent's case did not involve the "type of unforeseeable hardship envisoned by the regu-

lations implementing section 212(e) of the Immigration and Nationality Act". The application for a waiver of the requirements of section 212(e) was denied by the District Director at Baltimore, Maryland, and, on May 20, 1965, respondent's application for adjustment under section 245 was withdrawn.

While the above facts do not resolve the issue as to whether or not respondent would be subject to physical persecution upon his return to Viet Nam, we insert them in our decision for the reason that they indicate respondent's background and the circumstances under which he returned to the United States in 1958 for further study and training.

Respondent testified at his reopened hearing on May 20, 1965, (1) that if he is returned to Viet Nam he would have to take "a position" in political affairs; (2) that "people might be nasty" to him because he had the special privilege of remaining in the United States for a number of years, and (3) because he has an American family, he might be discriminated against. He states that he would not be free to practice medicine to support himself and his family, and the small salary paid by Viet Nam to its physicians would not permit him to support an American family. He would not be free to choose employment, and he believes that the present regime is still a dictatorship.

Respondent was investigated and cleared for a passport by the former (Diem) regime, which he professes to have feared the most. He was permitted to return to the United States for a second period of training, after having been here once already. If it is true that United States trained physicians are discriminated against in Viet Nam both by the government and by French-trained physicians, it is difficult to comprehend why he chose extended training in the United States. He admits that his own knowledge of conditions in Viet Nam predates the overthrow of the Diem regime.

For the most part the Board has not considered that joining protest groups and making public statements after entering the United States supports a withholding of deportation under section 243(h). Many aliens have attempted to build up a 243(h) case by this sort of activity. Whatever public statements and protests respondent may have made while in the United States do not seem to us sufficient to make him persona non grata to the present regime.

The record does not establish that respondent is wanted by his government for any reason except to fulfill the contracts he made, both with his own government and with the agencies who sponsored and supported him here. Many persons have gone to Viet Nam who are not natives of respondent's country. The revised statute,

section 11 of the Act of October 3, 1965 (8 U.S.C.A. 1253(h)), eliminates the requirement that there be a finding that respondent would suffer "physical" persecution if returned to his native country. Even considering this record under the new law we are unable to find that deportation of respondent to Viet Nam will subject him to persecution. The appeal will be dismissed.

ORDER: It is ordered that the appeal be dismissed.

*It is further ordered* that the order of the special inquiry officer of November 8, 1965 be and is hereby approved.