**KEH TONG CHEN, Plaintiff,**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Defendant.**

**Civ. A. No. 82–0010.**

United States District Court,
District of Columbia.

Aug. 13, 1982.

Winston W. Tsai, Washington, D.C., for plaintiff.

Lauri Steven Filppu and William C. Brown, Dept. of Justice Gen. Lit. and Legal Advice Section, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BRYANT, District Judge.

This case is before the court on the Attorney General's motion for summary judgment. Jurisdiction is founded on 28 U.S.C. § 1331 and § 279 of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1329 (1976).

The issue before the court is whether the Regional Commissioner of the Immigration and Naturalization Service ("INS") abused his discretion when he denied plaintiff's application to waive the two-year foreign residence requirement established by § 212(e) of the Act, 8 U.S.C. § 1182(e). The court finds that because the Regional Commissioner's decision may cause separation of a family, the Regional Commissioner's failure to set forth specific findings in support of his conclusion about "exceptional hardship" was arbitrary, capricious, and an abuse of discretion. The court denies the Attorney General's motion for summary judgment and enters summary judgment for plaintiff.

\* \* \*

Plaintiff Keh Tong Chen, a 46 year-old Taiwanese citizen, entered this country in 1969 as a nonimmigrant exchange visitor. He studied electrical engineering for two years at Washington University in St. Louis

at the expense of the Taiwanese Ministry of Defense. In 1979, Chen married Li Hwa, a Taiwanese native with U.S. citizenship; and in December 1980, they had a son, Jerry. Since 1971, when Chen's exchange visitor status terminated, Chen has been in this country illegally. However, Mrs. Chen has filed an immediate relative visa petition for Chen with the INS, see 8 U.S.C. § 1151(b),[1] which was approved in August 1980.

Under the provisions of § 212(e) of the Act, exchange visitors are required to return to their native lands for two years before they are eligible to apply for permanent residence in this country. This requirement encourages exchange students to return to their own countries to impart their impressions of the United States. S. Rep. No. 1068, 84th Cong., 2d Sess. (1956), reprinted in [1956] U.S.Code Cong. & Ad. News 2662, 2663. It also encourages students whose educations have been financed by their native countries to contribute their newly-acquired knowledge to their countries' development. Yu v. Marshall, 312 F.Supp. 229, 233 (S.D. Tex. 1970). However, § 212(e) allows the Attorney General to waive the foreign residence requirement when, among other requirements, the applicant demonstrates to the INS Commissioner that "departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), or that the alien cannot return to the country of his nationality or last residence because he would be subject to persecution on account of race, religion, or political opinion."[2]

Chen applied for a waiver of the two-year residence requirement on a number of grounds. Chen claimed that he would be persecuted in Taiwan because of his political opinions. He alleged that his wife would experience "exceptional hardship" in Taiwan because of her chronic tonsilitis, gout, allergy, hemorrhoids, otitis media, and thyroid dysfunction. And Chen asserted that his son Jerry would experience "exceptional hardship" were Jerry separated from his father for a two-year period. This assertion was supported by a letter from a child psychiatrist who characterized Chen as Jerry's "primary affection-giver," Record (R.) at 35, and concluded that "[t]he loss of Dr. Chen, as his son's love object, would be a major loss to the infant." Id.

Chen's application for a § 212(e) waiver was denied initially by the INS District Director, who found that Chen had not established that his wife would encounter "exceptional hardship" if he returned to Taiwan, or that Chen would be subject to persecution there.[3] Chen appealed that denial to the INS Regional Commissioner, to whom Chen presented new arguments and evidence, based partially on Jerry's birth. The Regional Commissioner found that Chen had not met his burden of showing that his wife or son would suffer "exceptional hardship" if he returned to Taiwan for two years, and that Chen had not established that he would be persecuted. The Regional Commissioner also denied the requested waiver. Chen filed a complaint in this court seeking review of the Regional Commissioner's denial; and the government filed a motion for summary judgment.

Chen opposes the government's motion for summary judgment because Chen claims that this case presents genuine issues

1. Immediate relatives otherwise qualified for admission as immigrants are admitted into the United States without regard to the numerical limitations set forth in the Immigration and Nationality Act, 8 U.S.C. § 1151(a).

2. In order to obtain a waiver, the applicant must first establish the exceptional hardship or persecution claim before the INS, then obtain a favorable recommendation from the International Communication Agency, see 42 Fed.Reg.

62,462 (December 13, 1977), and then obtain a determination from the Attorney General that granting the waiver would be in the public interest. Chen failed to establish his exceptional hardship and persecution claims before the INS.

3. Jerry was not yet born at the time of the District Director's determination.

of material fact relevant to his claims of "exceptional hardship" and fear of persecution based on political grounds. Chen's opposition does not acknowledge the court's limited scope of review in suits for review of administrative action taken pursuant to § 212(e). Where, as in this case, Congress simply provides for review, without setting forth the standards to be used or the procedures to be followed, the reviewing court's consideration is confined to the administrative record. *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963); *Doraiswamy v. Secretary of Labor,* 555 F.2d 832, 839 (D.C. Cir. 1976). Thus the task before the court is to determine whether the Regional Commissioner's findings of fact underlying his action pass the substantial evidence test, and whether the Regional Commissioner's action was capricious, arbitrary, or an abuse of discretion. *Mendez v. Major,* 340 F.2d 128, 132 (8th Cir. 1965); *Talavera v. Pederson,* 334 F.2d 52, 58 (6th Cir. 1964). Since there is substantial evidence in the record

to support the Regional Commissioner's finding that Chen would not be subject to political persecution in Taiwan,[4] the court will consider in detail only the Regional Commissioner's "exceptional hardship" determination.

\* \* \*

Section 212(e) and other similar provisions of the immigration laws have often been attacked on the grounds that they interfere with citizens' constitutional rights to maintain the family unit and to live in the United States. In every case presenting these challenges, however, courts have upheld the constitutionality of the legislation at issue.[5] The general themes which emerge from these rulings are, first, that the legislation does not directly interfere with citizens' rights, but only imposes indirect hardships upon citizen-relatives of aliens; and second, that the power to expel or exclude aliens is "a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell,*

---

**4.** The Regional Commissioner determined "[n]othing in the [newspaper] articles submitted on appeal dealing with the political situation in Taiwan, applies specifically to the applicant and views expressed by Dr. Quo in his affidavit are not shared by others as shown by the *Country Reports on Human Rights Practices* of February 2, 1981 published by the Department of State for the Committee on Foreign Relations of the United States Senate and the Committee on Foreign Affairs of the United States House of Representatives...." R. at 14.

**5.** *Acosta v. Gaffney,* 558 F.2d 1153 (3d Cir. 1977) (citizen infant's right to reside wherever she wishes is not violated by parents' deportation, because infant is incapable of exercising right to choose her residence); *Cervantes v. INS,* 510 F.2d 89 (10th Cir. 1975) (no Ninth Amendment right to avoid deportation where parents have citizen minor child); *Gonzalez-Cuevas v. INS,* 515 F.2d 1222 (5th Cir. 1975) (legal orders of deportation to parents do not violate constitutional rights of citizen minor children); *De Figueroa v. INS,* 501 F.2d 191 (7th Cir. 1974) (valid marriage to citizen does not of itself exempt alien from deportation); *Robles v. INS,* 485 F.2d 100 (10th Cir. 1973) (incidental impact of immigration laws on marriage status and family unit does not raise constitutional problems); *Aalund v. Marshall,* 461

F.2d 710 (5th Cir. 1972) (de facto deportation of citizen minor children does not void deportation order of parents or render it arbitrary and capricious); *Silverman v. Rogers,* 437 F.2d 102 (1st Cir. 1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1667, 29 L.Ed.2d 149 (1971) ("Even assuming that the federal government had no right either to prevent a marriage or destroy it, ... here it has done nothing more than to say that the residence of one of the marriage partners may not be in the United States."); *Perdido v. INS,* 420 F.2d 1179 (5th Cir. 1969) (citizen child has not exercised a deliberate decision to make this country his home and has no ability to confer immigration benefits on his parents); *Mendez v. Major,* 340 F.2d 128 (8th Cir. 1965) (enforcement of two-year residence abroad requirement does not violate rights of exchange visitor's citizen minor son, even though conditions may impose a certain amount of hardship upon him); *Swartz v. Rogers,* 254 F.2d 338 (D.C.Cir.), *cert. denied,* 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1372 (1958) (deportation of alien husband, although it affects marriage's physical conditions, does not destroy marriage nor violate citizen wife's right to live in this country). *See also Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977), *quoting Shaughnessy v. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953).

Courts deciding § 212(e) cases have consistently emphasized the Congressional determination that it is "detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the adjudication of waivers *including cases where marriage occurring in the United States, or the birth of a child or children, is used to support the contention that the exchange alien's departure from this country would cause personal hardship.* H.R. Rep. No. 721, 87th Cong., 1st Sess. 121 (1961) ("H.R. Rep. No. 721"). Courts have effectuated Congressional intent by declining to find exceptional hardship unless the degree of hardship expected was greater than the anxiety, loneliness, and altered financial circumstances ordinarily anticipated from a two-year sojourn abroad. *See Mendez v. Major,* 340 F.2d 128, 132 (8th Cir. 1965); *Talavera v. Pederson,* 334 F.2d 52, 58 (6th Cir. 1964).

■ Although separation of families following non-waiver of the foreign residence requirement is constitutional, and often may result from the considered effectuation of Congressional intent, nevertheless, "[t]he family and relationships between family members occupy a place of central importance in our nation's history and are a fundamental part of the values which underlie our society. *See Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)." *Bastidas v. Immigration & Naturalization Service,* 609 F.2d 101, 105 (3d Cir. 1979). The significance traditionally accorded the family in American life warrants that where the applicant alleges that denial of a waiver will result in separation from both a citizen-spouse and a citizen-child, a finding of "no exceptional hardship" should not be affirmed unless the reasons for this finding are made clear. *See id.* Otherwise, the reviewing court is

powerless to guard against arbitrary decisions which needlessly violate our nation's family tradition.

The court's insistence upon explicit administrative consideration of evidentiary material in the record finds support in the decisions of other courts reviewing INS actions likely to result in the uprooting of families and individuals. In *Santana-Figueroa v. Immigration & Naturalization Service,* 644 F.2d 1354 (9th Cir. 1981), a review of a decision of the Board of Immigration Appeals denying suspension of deportation, the Board found the petitioner ineligible for discretionary relief because his hardship was " 'bottomed primarily on economic factors.' " *Id.* at 1355. The court reversed the Board's decision because the Board gave no indication of having actually considered non-economic sources of hardship alleged in the record—for example, uprooting the petitioner from his church and community. The court explained that "[t]o affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion." *Id.* at 1357.

In *Prapavat v. Immigration & Naturalization Service,* 662 F.2d 561 (9th Cir. 1981), also a review of a Board of Immigration Appeals denial of suspension of deportation, the Board made the following "specific pronouncement," *id.* at 562, in response to petitioners' allegations: " 'the possibility of inconvenience to a citizen child is not in itself sufficient to constitute extreme hardship.' " *Id.* The court pointed out that the Board's "cursory reference to the citizen child's possible 'inconvenience' " does not show what weight the Board gave to evidence that the petitioner's daughter's medical problems could worsen abroad. The court concluded: "These laconic statements do not discharge the Board's duty ... to 'give reasons which show that it has properly considered the

facts which bear on its decision.' [Citation omitted.]" *Id.*[6]

The court's insistence upon clear articulation of reasons in cases involving a citizen-spouse and a citizen-child is consistent also with Congressional policy. Section 212(e) attempts to balance the interests of resident alien or citizen relatives of the applicant in maintaining family stability against the interests of the government in promoting the exchange program. *Gras v. Beechie,* 221 F.Supp. 422 (S.D. Texas 1963). The government's interest in furthering the exchange program's goals remains constant regardless of the number of resident alien or citizen relatives the applicant has in this country. But the more relatives the applicant has who are citizens, the more the balance tips in favor of granting the applicant a waiver. This is because failure to grant a waiver would result in harm to more individual citizens, *i.e.,* the applicant's relatives, and would also result in greater harm to the country as a whole, as a consequence of the likely departure of those relatives.

INS practice reflects this reality. It is highly unusual for the INS to refuse to waive the foreign residence requirement where the applicant has both a citizen-spouse and a citizen-child.[7] As the INS acknowledged in one of its decisions, "[i]n cases where both spouse and child (children) are U.S. citizens or lawfully resident aliens, exceptional hardship will generally exist due to the difficulty experienced by a family with children in parting from their relatives, friends and familiar surroundings, and attempting to readjust to life in a foreign country where they are not familiar with the language, mores or culture." *Matter of Nassiri,* 12 I. & N. Dec. 756, 757 (1968).[8]

Close scrutiny in cases involving a citizen-spouse and a citizen-child also comports with common sense. The "exceptional hardship" standard is purposely stringent so that aliens cannot create "exceptional hardship" in order to evade the purpose of the foreign residence statute. *See Orife v. Salturelli,* No. 5571229 (E.D. Mich. December 31, 1975). It can be expected that some aliens will contract sham marriages in order to evade the immigration laws. But it is less likely that aliens will have children, and far less likely that aliens will *both* marry

---

**6.** *See also Partheniades v. Shaughnessy,* 146 F.Supp. 772 (S.D.N.Y. 1956). In that case, a habeas corpus proceeding, the Board of Immigration Appeals held that the birth of the alien's child on native soil and the alien's military service did not justify suspension of deportation. Then District Judge Irving Kaufman ruled that the Board acted arbitrarily and capriciously in failing to consider the alien's allegations of "serious economic detriment" to his U.S. citizen daughter—namely, the substantial financial burden of having to go abroad; the difficulty of obtaining a permanent immigration visa in any reasonable length of time; the unavailability of education in Greece for the citizen daughter comparable to that available here; and the serious economic loss to the alien's family because of the limited employment opportunities available to him in Greece. Although *Partheniades* may be read as a case faulting the Board for not even inquiring whether the applicant met the statutory eligibility standard of "serious economic detriment," *Partheniades* also stands for the proposition that where the applicant alleges facts relevant to a statutory standard, the INS must demonstrate consideration of those facts in its decision.

**7.** The court has canvassed over twenty INS decisions in § 212(e) cases. In a majority of cases examined by the court which involve both a citizen-spouse and a citizen-child, the INS has waived the foreign residence requirement. *Compare* In re Cruikshank, 11 I. & N. Dec. 558 (1966); In re Arabian, 11 I. & N. Dec. 496 (1966); In re Duchneskie, 11 I. & N. Dec. 583 (1966); In re Habib, 11 I. & N. Dec. 464 (1965); In re Kim, 11 I. & N. Dec. 509 (1965); In re Santillano, 11 I. & N. Dec. 146 (1965); *and* In re Petuoglu, 11 I. & N. Dec. 1 (1964) *with Samala v. INS,* 336 F.2d 7 (5th Cir. 1964) and In re Nghiem, 11 I. & N. Dec. 541 (1966).

**8.** The court recognizes that because Mrs. Chen is a native of Chen's country of origin, the INS' treatment of the case at hand may not deviate from the policy announced in *Nassiri.* The court, however, relies primarily on the significance traditionally accorded the family unit to mandate careful scrutiny even when the citizen-spouse is a native of the applicant's country of origin.

and have children for fraudulent purposes. Since "exceptional hardship" claims of applicants with citizen-spouses *and* citizen-children are less likely to be fraudulent than the claims of applicants with fewer citizen-relatives, according rejection of these applicants' claims careful scrutiny on review is consistent with the statutory scheme.

\*     \*     \*

■ Review of the Regional Commissioner's decision in this case leaves the court uncertain whether the Regional Commissioner considered the record before him in arriving at his determination of no "exceptional hardship." The Regional Commissioner's decision is replete with recitations of the applicable law: *e.g.,* "The Congressional intent regarding exceptional hardship is clear . . . . [There is a] need for 'a most diligent and stringent enforcement . . . .' " R. at 15; " 'Although there is the probability that the marriage relationship will not be the normal relationship between the parties for the two-year period involved, we do not regard the situation as meeting the stringent test of exceptional hardship.' *Talvera [sic] v. Pederson* . . . ." *Id.* Then the Regional Commissioner states, "[T]he circumstances of a two-year separation of the family with accompanying anxiety, loneliness and altered financial circumstances are the hardships to be anticipated by compliance with the two-year foreign residence requirement, not exceptional hardships." *Id.*

The Regional Commissioner did list psychiatrist Linda Bock's evaluation of Jerry in the summary of the evidentiary record at the beginning of his opinion. R. at 14. But it is unclear whether the Regional Commissioner's conclusion about anticipated hardship reflects a consideration of Dr. Bock's

observations, or just a general statement of the applicable law. Dr. Bock's evaluation included a finding that, because of Mrs. Chen's frequent and intense wrist pain, Chen is the parent who usually lifts and holds Jerry. R. at 35. Dr. Bock wrote Chen "serves many primary caretaker functions for his son," *id.,* and "functions as a primary affection-giver." *Id.* She predicted that "[t]he loss of Dr. Chen, as his son's love-object, would be a major loss to the infant. There are no viable surrogate or supportive parenting figures available." *Id.* The Regional Commissioner mentions none of Dr. Bock's specific observations.

Had the Regional Commissioner specifically considered the effects on Jerry of separation from his "primary affection-giver" and found that these did not rise to the level of "exceptional hardship" contemplated by the Act, the court might have been obliged to affirm the Regional Commissioner's decision.[9] But the Regional Commissioner's decision demonstrates no such examination of the record. The court is unwilling to affirm a decision which might result in the separation of a family when the decision fails to reflect explicit consideration of substantive points in the record.

\*     \*     \*

INS decisions have stated that the exceptional hardship inquiry proceeds in two distinct steps.

> [I]t must first be determined whether or not such hardship would occur as the consequence of her accompanying him abroad, which would be the normal course of action to avoid separation. The mere election by the spouse to remain in the United States, absent such determination, is not a governing factor since any inconvenience or hardship which might thereby occur would be self-imposed. Further,

---

9. For example, in *Chiaramonte v. Immigration & Naturalization Service,* 626 F.2d 1093 (2d Cir. 1980), a review of a Bureau of Immigration Appeals decision denying petitioner a waiver of inadmissibility and adjustment of status, petitioner's son Francisco alleged petitioner's departure would cause Francisco to feel "sad and

alone." *Id.* at 1097. The immigration judge considered this allegation and concluded that it did not make out a case for the relief requested. The Bureau of Immigration Appeals and the circuit court upheld the immigration judge's decision.

even though it is established that the requisite hardship would occur abroad, it must also be shown that the spouse would suffer as the result of having to remain in the United States. Temporary separation, even though abnormal, is a problem many families face in life and, in and of itself, does not represent exceptional hardship as contemplated by section 212(e).... *Matter of Mansour,* 11 I. & N. Dec. 306, 307 (1965). *Matter of Bridges,* 11 I. & N. Dec. 506 (1965). The Regional Commissioner's statement "[i]t is not an exceptional hardship that the applicant's family chooses not to go with him to Taiwan," R. at 15, constitutes a finding that no hardship would occur were Chen's family to accompany him abroad, and is supported by substantial evidence cited in the decision. If the INS prescription of a two-step analysis is correct, consideration by the Regional Commissioner of the effect on Jerry of separation from his father would have been superfluous, and the Regional Commissioner's failure to make that consideration explicit does not render inadequate his decision.

The two-step analysis does not comport with the legislative history of the statute. Section 212(e)'s reference to the INS Commissioner's determination that "departure from the United States would impose exceptional hardship upon the alien's spouse or child" is vague—the plain language of the statute does not indicate whether the departure under consideration should be the departure of the alien alone or the departure of the alien and the departure of the alien's spouse and child. The legislative history of the statute, however, says, "[I]t is believed to be detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the adjudication of waivers including cases where marriage occurring in the United States, or the birth of a child or children, is used to support the contention that *the exchange alien's* departure from this country would cause personal hard-

ship." H.R. Rep. No. 721 at 121 (emphasis deleted and added). The legislative history, while not conclusive, indicates that Congress intended that the INS consider, as a matter of course, the effect of the alien's departure upon the alien's spouse and/or child remaining in the United States.

More importantly, the two-step analysis would introduce into the statute the very constitutional infirmity which courts have ruled the statute avoids. Courts have upheld the constitutionality of INS decisions which result in "de facto deportation" of citizens on the grounds that "de facto deportation" is not a necessary result of government action, but rather an indirect consequence of the citizen's choice between alternatives. *See, e.g., Lopez v. Franklin,* 427 F.Supp. 345 (E.D. Mich. 1977). Likewise, courts have rejected claims that the government's causing alien parents to leave the United States infringes citizen-children's constitutional rights on the theory that any decision concerning the children's residence is the parents', not the state's. *Acosta v. Gaffney,* 558 F.2d 1153, 1158 (3d Cir. 1977); *Perdido v. INS,* 420 F.2d 1179 (5th Cir. 1969). It follows that where the citizen does not have available two alternatives recognized by the law, the citizen's selection of the only available course of action is directly attributed to government action.

It is well established that § 212(e) does not contemplate a citizen's voluntarily choosing a course which would result in "exceptional hardship" within the meaning of the statute. Such a choice is no choice at all. *See Acosta v. Gaffney,* 413 F.Supp. 827, 833 (D.N.J. 1976), *rev'd on other grounds,* 558 F.2d 1153 (3d Cir. 1977). An analysis which considers first whether the citizen's accompanying the alien constitutes "exceptional hardship," and upon a negative finding proceeds no further, would not determine whether the citizen can stay in this country and endure separation without "exceptional hardship." The analysis would consequently fail to establish that the citi-

**1068**

zen's accompaniment of the alien was a choice among alternatives recognized by law, not a direct result of government action.

It is irrelevant that in this case, explicit consideration of the possibility of *Mrs.* Chen remaining in this country would not have resulted in a finding of "exceptional hardship." The Regional Commissioner was still obliged to consider the evidence concerning Jerry's separation from his father. It is inconceivable that a mother would freely choose to separate her son from herself or from his father if either separation would work "exceptional hardship." Unless the Regional Commissioner considered whether the citizen-child would experience "exceptional hardship" as a result of the government's causing the alien-parent to leave the United States, the Regional Commissioner could not determine whether the citizen-parent's exercise of her right to decide the child's residence is a free choice, or a decision constrained by governmental action.

When one among alternative constructions would involve serious constitutional difficulties, the court should reject that interpretation in favor of another. *United States v. Thompson*, 452 F.2d 1333, 1337 (D.C. Cir. 1971), *cert. denied*, 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972); 2A Sutherland, Statutory Construction, § 45.11 (4th ed. C.J. Sands 1973). The two-step analysis presents constitutional difficulties because it fails to establish whether the decision by the applicant's spouse and/or child to accompany the applicant abroad is a true choice between two alternatives. Therefore, the Regional Commissioner's determination that Mrs. Chen and Jerry would not experience "exceptional hardship" were they to accompany Chen abroad did not obviate the need also to examine with requisite care whether they would experience "exceptional hardship" upon separation. The Regional Commissioner's failure to demonstrate explicit consideration of evidence in the record relative to Jerry's "exceptional hardship" claim was arbitrary, capricious, and an abuse of discretion.

\*     \*     \*

The court's finding that the Regional Commissioner's decision was arbitrary, capricious, and an abuse of discretion precludes entry of summary judgment for the Attorney General. Filing of a cross-motion is not a prerequisite to the entry of a judgment for the non-moving party. 6 Moore's Federal Practice ¶ 56.12; Wright & Miller, Federal Practice and Procedure: Civil § 2719. Accordingly, the court awards summary judgment to plaintiff, and remands the matter to the Immigration and Naturalization Service for proceedings not inconsistent with this opinion.