Arnold H. **SLYPER**, Plaintiff,

v.

**ATTORNEY GENERAL**, Defendant.

Civ. A. No. 82–3048.

United States District Court,
District of Columbia.

Dec. 22, 1983.

Charles Gordon, Washington, D.C., for
plaintiff.

Sylvia Royce, Donald A. Couvillon,
Thomas W. Hussey, Washington, D.C., for
defendant.

OPINION

HAROLD H. GREENE, District Judge.

Plaintiff, a physician, entered the United
States in 1979 as a nonimmigrant exchange
visitor to receive graduate medical educa-
tion.[1] Exchange visitors are required un-
der the statute to return to their native
land for two years before they are eligible
to apply for permanent residence in this

---

**1.** See section 101(a)(15)(J) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(J).

country;[2] unless the Attorney General waives the foreign residence requirement. The Attorney General may do so, *inter alia*, if it is demonstrated that departure from the United States would impose "exceptional hardship" on the alien's spouse or child. The Immigration and Naturalization Service (INS), acting on behalf of the Attorney General, refused to waive the requirement, and plaintiff brought this action claiming abuse of discretion. The matter is now before the Court on cross motions for summary judgment.

Plaintiff's claim of exceptional hardship is comprised of the following elements.

■ First. Plaintiff's American wife is a research chemist, and it is claimed that her professional career would be disrupted as a result of her departure to England, plaintiff's home, were she to accompany him there during the two-year hiatus. Mrs. Slyper has declared that a move to England "would cause irretrievable loss" and that it "would be a major setback in my professional career." A.R. 23. The district director's decision dismissed this factor on the basis that "she could avoid this hardship by remaining in the U.S." A.R. 14. As the Court of Appeals for the Third Circuit has noted,

> [t]he family and relationships between family members occupy a place of central importance in our nation's history and are a fundamental part of the values which underlie our society..... Accordingly, we view the separation of family members from one another as a serious matter requiring close and careful scrutiny.

*Bastidas v. INS*, 609 F.2d 101, 105 (3d Cir.1979). Indeed, the INS itself has held that interruption of a spouse's established career would, either alone or in combination with other factors, be regarded as causing exceptional hardship within the meaning of the statute.[3]

Second. The record shows that a move to England would have serious economic consequences for plaintiff and his wife. There was uncontradicted evidence that both spouses could anticipate unemployment for a period of from six to nine months. The INS regarded these as an ordinary, not an exceptional, hardship.[4]

Third. There was evidence that Mrs. Slyper is very close to her family, particularly an aged grandmother who requires her support and comfort, and that she would be confronted with a very difficult problem if she had to choose between these family members and her husband. Again, INS concluded that these were ordinary rather than exceptional hardships.[5]

■ While the INS may well be correct in its assumption that each one of these factors would not, in isolation, qualify as "extraordinary hardship," [6] it does not follow that such a degree of hardship would not be established by a totality of the circumstances. But the district director [7] considered only each factor in isolation; he never gave consideration to the question whether on a review of all the factors a case of exceptional hardship had been made out. That in itself was error. *Ramos v. INS*, 695 F.2d 181, 189 (5th Cir.1983); *Barrera-Leyva v. INS*, 637 F.2d 640, 643 (9th Cir.1980); *Prapavat v. INS*, 638 F.2d 87, 89 (9th Cir.1980), *reaffirmed*, 662 F.2d 561 (9th Cir.1981).

There is yet another circumstance in this case which bears significantly upon the ap-

---

**2.** Section 212(e) of the Act, 8 U.S.C. § 1182(e).

**3.** See, *e.g., Matter of Savetamal,* 13 IN 249 (1969); *Matter of Bass,* 11 IN 512 (1966).

**4.** But see *Matter of Davoudlarian,* 11 IN 300 (1965); *Matter of Habib,* 11 IN 464 (1965); *Matter of Bridges,* 11 IN 506 (1965).

**5.** But see *Matter of Kawasaki,* 12 IN 864 (1968).

**6.** But see notes 2 to 5 *supra.* It should also be noted that in immigration law parlance, "extra-

ordinary hardship" is not as narrow a concept as might appear at first blush. In other parts of the statute there appear such terms as "extreme" or "exceptional and extremely unusual" (section 244(a)) which obviously are more stringent.

**7.** The regional commissioner, whose decision is that of the agency, simply adopted the district director's findings.

propriateness of the INS' exercise of discretion. When plaintiff applied for admission to the United States, the American vice consul in Toronto, Canada, assured him that he would not have to depart from the United States for two years, and plaintiff's official exchange-visitor document reflects the consul's determination that plaintiff was "not subject to the two year residence requirement." [8] Mrs. Slyper testified without contradiction that she was close to her family and deeply involved in her career, that plaintiff had told her that he was not subject to the foreign residence requirement, and that the place where she and plaintiff were to live was an important consideration in their marriage plans. A.R. 22.

The district director brushed off this evidence with the comment, which had no evidentiary support whatever, that

> [i]t can not be interpreted that had the vice consul made the correct determination, the applicant would not have married his United States citizen spouse. A.R. 13.

No one today can absolutely know whether Mrs. Slyper would or would not have married plaintiff when she did had she known that this would mean a two-year separation either from him or from his family and her employment. But it is difficult to see on what basis the district director could simply dismiss this testimony on the basis of his own suppositions with regard to this issue. See also, *Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951). What we do know is, first, that plaintiff's spouse has testified that the absence of the threat of a possible two-year separation was an important consideration to her with regard to her marriage plans, and second, that under the INS decision she would now be subjected to that separation with all of the problems recited above notwithstanding

that these difficulties were generated by the error of the consul.

As Judge Bryant has aptly observed, the "exceptional hardship" standard is stringent so that aliens will not be able to create such hardships themselves in order to evade the purpose of the foreign residence statute, and that several of the immigration laws are not unconstitutional only because a *de facto* deportation is not the result of a governmental choice but that of the alien. *Chen v. Attorney General*, 546 F.Supp. 1060, 1061, 1065, 1067 (D.D.C. 1982). It cannot be said that the problems and hardships in this case were manufactured by plaintiff and his spouse; they were created, or at least heavily influenced, by an agent of the government.

This factor clearly tips the balance—if further weight is needed—on favor of a finding of exceptional hardship and abuse of discretion.

The Court will grant summary judgment to the plaintiff and remand the case to the Attorney General for proceedings not inconsistent with this opinion.

---

8. When the matter was brought to the consul's attention at the time plaintiff's difficulties with INS arose, he acknowledged that he had given erroneous advice and "apologize[d] for any misunderstanding that has arisen." A.R. 17. Defendant argues that plaintiff must have known from other evidence that the two-year requirement applied, but there is no basis for the speculation that such information outweighed, in the minds of plaintiff and his wife, the official advice from the consul in Toronto.