Faiz A. AL-KHAYYAL

v.

**UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE, et al.**

Civ. No. C 85–3782.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 21, 1986.

Myron N. Kramer, Atlanta, Ga., for plaintiff.

Sharon D. Stokes, Asst. U.S. Atty., Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This immigration case is before the court on Plaintiff's motion for summary judgment and on Defendants' motion to dismiss or, in the alternative, for summary judgment.

Plaintiff seeks judicial review of a final administrative decision of the United States Immigration and Naturalization Service (INS).[1] That decision denied Plaintiff the waiver which he sought of the two-year foreign residency requirement imposed upon him by § 212(e) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1101, *et seq.* The facts in this case are largely undisputed, primarily because both parties must rely on the administrative record, which has been filed with the court. Those facts are set forth below.

Plaintiff is a 37 year old native and national of Saudi Arabia, born on January 2, 1949, in Iraq. In May, 1979, while in Washington, D.C., Plaintiff married Riccarda Nella Heising, a citizen of the United States.

Subsequent to the marriage, Plaintiff and his spouse left the United States and went to Saudi Arabia, where they resided until late December of 1980. During some of the time the couple resided in Saudi Arabia, Plaintiff's wife was employed as a systems analyst by the Arabian American Oil Company, which also employed her husband.

In December of 1980 and January of 1981, respectively, Plaintiff and his spouse returned to the United States. Plaintiff entered on a J–1 visa to assume the position of assistant professor in the School of Industrial and Systems Engineering at Georgia Institute of Technology, Atlanta, Georgia. Plaintiff was admitted as a nonimmigrant exchange visitor under 8 U.S.C. § 1101(a)(15)(J), based on his temporary employment as a visiting professor under the auspices of an authorized exchange program, Program No. P–1–2481.

In applying for the J–1 visa, Plaintiff submitted to the U.S. Consulate in Dhahran, Saudi Arabia, a form which Georgia Tech had sent him.[2] He was asked to return in a few days to pick up his visa. He did so, and at that time was given a sealed envelope containing his form IAP–66 and was instructed to submit it to an immigration officer upon his arrival in the United States.

After Plaintiff's arrival in the United States, he began his professorial duties at Georgia Tech. Plaintiff requested and received two one-year extensions on his J–1 visa, the second of which extended his visi-

---

1. Plaintiff has also sought declaratory and injunctive relief, asking the court to direct that he be granted the waiver. However, neither the Director of the United States Information Agency nor the Attorney General have made the additional findings required for waiver. 8 U.S.C. § 1182(e). Furthermore, the actual granting of the waiver is within the discretion of the Attorney General. *Id.* The court's proper role in this area of agency expertise is limited to reviewing the agency decision for abuse of dis-

cretion. The appropriate remedy for such an abuse would be remand with instructions to the agency. *Nayak v. Vance,* 463 F.Supp. 244, 251 (D.S.C.1978). Because the court has jurisdiction for such a review under 8 U.S.C. § 1329, Defendants' motion will be considered as a motion for summary judgment.

2. This visa application is known as a Form IAP–66.

tor status through November 30, 1983. However, when Plaintiff traveled to Austria in July of 1983, the U.S. consular officer in Vienna processed a new IAP–66 for Plaintiff, which indicated that Plaintiff was not subject to the two-year residency requirement of § 212(e).

In August of 1983, Plaintiff sought to change his visa classification from non-immigrant exchange visitor (J–1) to non-immigrant temporary worker (H–1), pursuant to 8 U.S.C. § 1101(a)(15)(H). On or about August 31, 1983, Plaintiff's application was denied by the INS district director in Atlanta for Plaintiff's failure either to have complied with the foreign residency requirement of the Act or to have secured one of the waivers of that requirement authorized under § 212(e) of the Act.

On or about September 29, 1983, Plaintiff submitted an application seeking to have the foreign residency requirement waived on the basis that its enforcement would impose an exceptional hardship on his spouse. On July 9, 1984, the district director denied Plaintiff's request for a § 212(e) waiver on the grounds that Plaintiff had failed to demonstrate that exceptional hardship would result.

Plaintiff's subsequent appeal of that decision was denied by the associate commissioner of INS in a written opinion. Plaintiff's motion to reopen and reconsider were also denied. Plaintiff now challenges the associate commissioner's denial of waiver. Deportation proceedings have been commenced against Plaintiff by service of an order to show cause.

*Discussion*

██ The issue before the court is whether INS abused its discretion in interpreting and applying the "exceptional hardship" standard to Plaintiff's spouse. The court's role is to determine whether INS weighed the appropriate factors in reaching its decision, and whether there is sufficient evidence in the administrative record to support the INS findings. *Keh Tong Chen v.*

*Attorney General*, 546 F.Supp. 1060, 1063 (D.D.C.1982).

Plaintiff came to this country as an exchange visitor under § 101(a)(15)(J) of the Immigration Act, which provides that aliens may enter the United States temporarily as non-immigrants if they participate in programs designated for that purpose by the Director of the United States Information Agency (USIA). The statute requires that Plaintiff have "a residence in a foreign country which he has no intention of abandoning," and that he be a "bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description." 8 U.S.C. § 1101(a)(15)(J).

Because Plaintiff's area of expertise appears on the "skills list" published for his country of origin by the USIA, he is subject to a two-year foreign residency requirement. 8 U.S.C. § 1182(e). This requirement encourages exchange visitors to impart their impressions of the United States to their countrymen and to contribute their knowledge and skills to their country's development. *Chen*, 546 F.Supp. at 1062. Plaintiff is thus barred from applying either for permanent residence or for change of his J–1 status without first returning to his home country for two years. 8 U.S.C. § 1182(e).

However, that requirement may be waived by the Attorney General

> ... upon the favorable recommendation of the Director of the United States Information Agency, pursuant to the request of ... the Commissioner of Immigration and Naturalization after he has determined that the departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse is a citizen of the United States or lawfully resident alien)....

8 U.S.C. § 1182(e). The waiver is limited to the cases of aliens whose admission to the United States "is found by the Attorney General to be in the public interest." *Id.*

The standard of exceptional hardship[3] is a strict one for several reasons. First, Congress has stressed the importance of "a most diligent and stringent enforcement of the two-year foreign residence requirements" to the purposes of the program and to the national interests of the countries concerned. H.R.Rep. No. 721, 87th Cong., 1st Sess. 121 (1961). Second, a lenient standard would allow exchange visitors to routinely avoid the requirement by generating hardship situations once they arrive in this country. *Chen,* 546 F.Supp. at 1065; *Slyper v. Attorney General,* 576 F.Supp. 559, 561 (D.D.C.1983).

Thus, exceptional hardship contemplates "more than normal personal hardship," *Talavera v. Pederson,* 334 F.2d 52, 58 (6th Cir.1964), or greater hardship than "the anxiety, loneliness, and altered financial circumstances ordinarily anticipated from a two-year sojourn abroad," *Chen,* 546 F.Supp. at 1064. It should also be noted that the standard for waiver is extreme hardship to the *spouse or children,* not to the exchange visitor himself.

The factors cited by Plaintiff in support of his claim of extraordinary hardship include the interruption of his wife's legal education[4] and career, the unlikelihood of his wife finding a job in Saudi Arabia, the financial strain of maintaining two households, the emotional strain of separation on their marriage, the economic loss from the interruption of Plaintiff's work on an engineering treatise, the loss of a financial and personal relationship with Plaintiff's niece and nephew, the burden of mortgage payments on the couple's house, and Plaintiff's purpose of coming to the U.S. to teach. The decision of the INS associate commissioner shows that he was aware of each of these factors, and considered them in reaching his decision. *See* Administrative Record (AR) 51–56. Plaintiff's argument therefore rests on his three challenges to the weight which INS accorded to these factors.

First, Plaintiff argues that INS failed to follow its prior hardship decisions in which the waivers were granted on similar facts. Second, Plaintiff argues that INS failed to reduce its standard for exceptional hardship in light of his teaching pursuits. Finally, Plaintiff argues that INS erred in finding that he had "full knowledge" of the two-year residency requirement. Plaintiff thus contends that INS acted improperly both in discounting the obligations he and his spouse assumed in this country and in disregarding the role of the consular official in failing to orally advise him of the requirement.

Plaintiff's first argument is that INS's decision is inconsistent with the agency's interpretation of the "extraordinary hardship" standard as applied in prior hardship cases. Plaintiff contends that the agency's denial of waiver was thus an abuse of discretion and that those cases establish extraordinary hardship to his spouse as a matter of law. Defendants argue that those cases are distinguishable, and in any event do not constitute "binding precedent" in the sense Plaintiff contends.

It is clear that published INS decisions have precedential value for subsequent agency proceedings involving the same issue or issues. 8 C.F.R. § 103.3(e). However, it is also clear that such decisions are of limited value in reviewing an agency determination which is as fact-specific as the judgment of exceptional hardship. Plaintiff's situation varies factually in certain respects from each of the cases cited.[5] In light of the broad discretion conferred

---

**3.** While a waiver is available on other grounds, Plaintiff has only applied on the basis of exceptional hardship to his spouse.

**4.** This factor should now be moot since Plaintiff's wife was scheduled to graduate from law school in May of 1985.

**5.** Of particular significance are the facts that Plaintiff's wife has previously resided with him in his home country for a substantial period of time, without financial or health problems, and that the couple have no children to suffer disruption from a stay abroad.

on the agency in these matters,[6] the court is unable to find that the agency decision in this case varied so significantly from earlier decisions as to constitute an abuse of that discretion.

■ Second, Plaintiff contends that INS failed to apply to his case the more lenient standard for exceptional hardship which is applicable to exchange visitors who come to this country as teachers rather than as students. The authorities[7] cited by Plaintiff do suggest that a more liberal attitude may be taken toward hardship applications from teachers, but do not establish a right to a waiver. The associate commissioner addressed this issue in his decision, describing the fact that Plaintiff came to teach rather than to study as an "ameliorative factor." AR 54. Nevertheless, the commissioner found that exceptional hardship had not been shown. Since the agency took Plaintiff's teaching status into account in its determination, the court finds no basis on which to remand the matter for additional review.

Third, Plaintiff argues that he did not know he was subject to the two-year foreign residency requirement when he entered this country on a J–1 visa. Plaintiff contends that INS committed error in two respects in failing to properly taken into account his lack of knowledge.

His first position is that the agency improperly discounted certain hardships to his spouse on the grounds that Plaintiff and his wife had brought these burdens on themselves with full knowledge of the residency requirements. Plaintiff argues that neither he nor his wife had such knowledge until he applied for a change of status in 1983.

Plaintiff's second position is that INS did not accord sufficient weight to the fact that the consul in Saudi Arabia allegedly failed to advise him of the two-year requirement, as mandated by the regulations.[8] Plaintiff argues that the consul's error contributed to his current hardship situation, and that INS's cursory dismissal of that factor is an abuse of discretion, citing *Slyper v. Attorney General*, 576 F.Supp. 559 (D.D.C.1983).

■ Since Plaintiff's arguments turn on his account of how he was issued the J–1 visa, the relevant portions of that account are set forth below:

> In accepting an offer for a faculty position at Georgia Tech, I requested a sponsorship visa from the host department. Subsequently, the School of Industrial and Systems Engineering sent me a completed IAP–66 form in late May or early June, 1980. I briefly looked over the forms, which covered the period 1 December 1980 to 1 December 1981, noted the effective dates and filed the papers away until a more appropriate time to submit them to the US Consulate in Dhahran, Saudi Arabia ...

> As the time approached for my faculty appointment at Georgia Tech I made final plans for the move, including resigning my position at ARAMCO. In November 1980, I retrieved the IAP–66 form, read the instructions and submitted the form with my passport to the US Consulate in Dhahran, Saudi Arabia for issuance of the visa. I was instructed to return in a few days by consular official. At the time I submitted the form, I had no idea I would be forced to return home for a two year residency

---

**6.** The Act commits the definition of "extraordinary hardship" in the first instance to the commissioner of INS and his delegates, "and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute." *INS v. Wang*, 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (definition of similar phrase "extreme hardship" in 8 U.S.C. § 1254(a)(1) is committed to the Attorney General and his delegates).

**7.** *Matter of Duchneskie*, 11 IN 583 (1966); *Matter of Coffman*, 13 IN 206 (1969); *Yu v. Marshall*, 312 F.Supp. 229 (S.D.Tex.1970); H.Rep. No. 721, 87th Cong., 1st Sess. 122 (1961).

**8.** 22 C.F.R. § 41.65(c) states that the consular officer shall determine whether the alien is subject to the two-year bar "... and shall inform the alien of such determinations." The regulation does not require that the information be conveyed orally.

requirement. When I returned to pick up my visa, I was given a sealed envelope which I was instructed to give to an immigration officer at my port of entry. The envelope contained the IAP–66. I would like to emphasize that no consular official discussed with me, before or after, the meaning and conditions of accepting a J(1) visa.

In late December 1980, I arrived in the US entering at Hartsfield International Airport in Atlanta, Georgia. An immigration official opened the sealed envelope from the US Consulate, processed the IAP–66 form and gave me the pink copy. It was only then that I noticed that Part III of the IAP–66 form had been completed by the vice consul in Dhahran. I did not fully understand the meaning of this, but decided it could not develop into any serious complications because my wife is a U.S. citizen.

Plaintiff's Affidavit, AR 90–91.

Despite Plaintiff's claim that he had no knowledge of the two-year bar, the court finds that his arguments must be rejected. The record as a whole shows that Plaintiff should have known that he was subject to the two-year foreign residency requirement. Plaintiff's original J–1 form clearly indicates that such a requirement might be applied. AR 282. Plaintiff concedes that he read the form instructions. AR 91.

Furthermore, the form shows Plaintiff's signature below the following statement:

I understand that a Consular or Immigration Officer will determine whether I am subject to the two year home country physical presence requirement described in Item 1(e) above. If such officer determines that I am subject, I will accept that determination and comply with the requirement. I understand that the determination will be endorsed in part II, page 1 of this form. I certify that I have read and I understand the foregoing.

AR 282. The officer's finding that Plaintiff was subject to the two-year bar is set forth in Part II. AR 281. Plaintiff's signature and the officer's finding are dated the same day. Plaintiff has not disputed that it is his signature on the form, and that signature matches Plaintiff's signature on other documents in the record. *See, e.g.,* AR 235–49, 271, 275, 278, 280.

Plaintiff therefore should have been aware of the residency requirement, not from poring over the Immigration Act but from the plain language of the form he signed. Plaintiff's agreement to abide by the determination to be filled in in Part II distinguishes this case from *Slyper,* where the American consul erroneously assured the plaintiff when he applied for admission to the U.S. that he would *not* be subject to the residency requirement. 576 F.Supp. at 561. The consul also entered that erroneous determination on Slyper's exchange visitor document. *Id.* In contrast, Plaintiff's original entry form [9] shows a determination that Plaintiff is subject to the two-year requirement, to which Plaintiff consented by signature. *Slyper* is therefore not controlling in this case.

Plaintiff was therefore at least on notice that he was subject to the two-year foreign residency requirement. The American consul's alleged failure to confer with Plaintiff [10] about the conditions of the J–1 visa is not a controlling factor in light of Plaintiff's signed agreement to comply with the consul's determination. INS was therefore acting within its discretion in giving less consideration to those elements of hardship which arose as a result of actions taken by Plaintiff and his spouse after his arrival in this country on a "temporary" basis.

The court finds that the agency properly considered the relevant factors in reaching its decision, and that there is sufficient evidence to support the agency findings.

---

**9.** Plaintiff's 1982 and 1983 extension forms also contain the same determination and Plaintiff's signed consent thereto. AR 274–5, 277–8. The contrary determination on the 1983 Austrian form, AR 279, which Plaintiff maintains was necessary to renew the visa stamp in his passport, did not relieve Plaintiff of the residency requirement to which he had already agreed on admission to the United States.

**10.** *See* note 8, *infra.*

Plaintiff's motion for summary judgment is therefore DENIED. Defendants' motion for summary judgment is GRANTED.