**YOUNGHEE NA HUCK, et al., Plaintiffs,**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Defendant.**

Civ. A. No. 86–3355.

United States District Court, District of Columbia.

Dec. 16, 1987.

Charles Gordon, Washington, D.C., for plaintiffs.

James N. Owens, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

Plaintiff Younghee Na Huck ("Na"), a Korean citizen, entered the United States in 1979 as a nonimmigrant exchange visitor to accept a Research Assistant position at the University of Chicago. *See* section 101(a)(15)(J) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1101(a)(15)(J). Because her visit was financed by United States government funds —she participated in the Fulbright Program—Na was subject to the provision of the Act requiring that exchange visitors return to their native lands for two years before they may apply for permanent residence in the United States. *See* section 212(e) of the Act, 8 U.S.C. § 1182(e). While in the United States Na fell in love with and married Geoffrey James Huck, a United States citizen joined as a plaintiff in this action.

Between 1984 and 1986, authorized officials of the Immigration and Naturalization Service ("INS"), acting on behalf of the United States Attorney General, denied Na's applications for adjustment to permanent residence status and for waiver of the two-year foreign residence requirement. Having thoroughly exhausted available administrative remedies,[1] plaintiffs now seek recourse in what they hope will be a more sympathetic venue. Presently before the court are the parties' cross motions for summary judgment.

Congress, in enacting the Immigration and Nationality Act, committed decisions as to alien and resident status to the sound discretion of the Attorney General and his delegates, including the Commissioner of INS. Hence our task in reviewing agency decisions in this specialized area is an exceedingly narrow one. *See INS v. Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981); *Al–Khayyal v. INS,* 818 F.2d 827, 831 (11th Cir.1987). But the discretion exercised by INS over such matters, while considerable, is not unbridled. The reviewing court must ensure that the agency has "articulate[d] a reasoned basis for its decisions," *Santana–Figueroa v. INS,* 644 F.2d 1354, 1357 (9th Cir.1981); that is has confronted plaintiff's claims in a serious and sincere fashion, *Prapavat v. INS,* 662 F.2d 561, 562 (9th Cir.1981); and that it has undertaken "explicit administrative consideration of evidentiary materials in the record," *Chen v. Attorney General,* 546 F.Supp. 1060, 1064 (D.D.C.1982). With these guiding principles in mind, we proceed to consideration of the agency's adverse decision.

Section 212(e) of the Act, 8 U.S.C. § 1182(e), provides that the Attorney General may waive the two-year residence requirement upon a showing that compliance with this provision would impose "exceptional hardship" upon the applicant's spouse or child. The present record reveals that at each stage of the administrative process plaintiffs advanced a number of claims which routinely serve as indicia of "exceptional hardship," each of which was rejected by the INS District Director and Associate Commissioner.

First, the officials concluded that Na "had been clearly aware of her obligation to fulfill a two-year foreign residence period ...," and thus will not now be heard to complain of unexpected hardships. *See* Administrative Record ("A.R.") 36,3,4. This bald assertion finds no support in the record. Plaintiffs' uncontradicted testimony indicates that upon contemplating marriage Na and Huck each consulted the Chicago INS office for official advice as to relevant INS policies. On both occasions

---

1. Plaintiff Na's waiver application was first denied by an INS District Director on June 28, 1985. An Associate Commissioner of Examinations (hereinafter "Associate Commissioner") vacated and remanded this decision on October 18, 1985, and the District Director reaffirmed its initial decision on November 27, 1985. The Associate Commissioner affirmed this decision first on appeal on March 20, 1986, and again upon plaintiffs' request for reconsideration on September 11, 1986.

they were assured by INS officials that their marriage would nullify the two-year residence requirement. A.R. 39,60. Plaintiffs further testified that this official imprimatur weighed heavily in their decision not to postpone marriage.

■ The District Director and Associate Commissioner made no effort to rebut this testimony. The INS officials were perhaps correct, in a literal sense, that plaintiffs were "aware," albeit vaguely, of the residence requirement. But they were equally "aware," or were led to believe by official representations, that marriage would render the provision inapplicable to their circumstances. Plaintiffs' reasonable reliance on official counsel bears on our consideration of the agency's exercise of discretion. *See Slyper v. Attorney General,* 576 F.Supp. 559, 560–61 (D.D.C.1983) (reversing INS decision on analogous facts.) [2]

The Associate Commission agreed with plaintiffs that Huck would suffer exceptional economic and cultural hardship if forced to relocate in Korea to be with his wife. A.R. 35. The Associate Commissioner concluded, however, that Huck could avoid this hardship by remaining in the United States during the two years in which his spouse returns to her homeland. Under this latter option, reasoned the official, Huck's life "would be essentially unchanged," but for the "potential for discomfort" resulting from the temporary separation. A.R. 29.[3]

Again the record belies the agency's facile conclusion. Indeed, the record in fact suggests that the ramifications of the couple's separation would be considerably more severe than the agency acknowledged. Most striking is the plaintiffs' well-documented showing of Huck's history of medical and emotional problems, problems which could well be exacerbated by a prolonged period of family separation. The Associate Commissioner was evidently mindful of these concerns when on October 18, 1985 he vacated and remanded the District Director's adverse decision, finding that his "consideration of the pre-existing medical condition of the applicant's spouse" was "inadequate." A.R. 45. On remand the District Director did not refer specifically to plaintiffs' showing of emotional hardship, noting only that "[y]ou [Na] have not established that your solo departure from the United States would impose any exceptional hardship on your spouse if he—by choice—elects to remain in the United States." A.R. 4.

On appeal of this decision, the Associate Commissioner had before him a letter from a doctor who had treated Huck for migraine headaches, dizzy spells, and emotional problems continuously since 1975, as well as a statement from a clinical psychologist who treated Huck during most of 1981 for episodes of acute and virtually incapacitating anxiety. Both professionals expressed grave reservations as to the effect that two years of separation would have on Huck. A.R. 33,34,62. In affirming the decision below, the Associate Commissioner gave no indication that he had considered these letters, but for an unexceptional citation to an immigration decision stating the general rule that an applicant bears the burden of demonstrating that separation would visit hardship upon the applicant's spouse. A.R. 36 (citing

---

**2.** It is true, as defendant notes, that the misinformation provided by the Chicago INS officials does not rise to the level of "affirmative misconduct" required in order to estop the government. *See INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). But the standard for estoppel is only tangentially relevant to whether reliance on official misinformation is a factor to weigh in considering a claim of exceptional hardship.

**3.** We deplore the callous attitude with which the INS officials propose the "Hobson's choice" of separation as alleviating the hardship facing plaintiffs. At the very least, we must be unusually diligent in scrutinizing INS decisions which prescribe family separation as a palliative for otherwise valid claims of hardship. *See Bastidas v. INS,* 609 F.2d 101, 105 (3d Cir.1979) ("we view the separation of family members from one another as a serious matter requiring close and careful scrutiny"); *Chen v. Attorney General,* 546 F.Supp. 1060, 1064–65 (D.D.C.1982) ("close scrutiny" appropriate in citizen-spouse and citizen-child context).

*Matter of Mansour,* 11 I & N Dec. 306 (1965)).

Only on reconsideration of his decision did the Associate Commissioner accord even cursory attention to these concerns. Addressing only the clinical psychologist's testimony, he observed that "the applicant's spouse has no extensive history of mental treatment and, in fact, has been said to be currently 'functioning without symptoms.'" A.R. 29. This statement ignored the professional opinion of the psychologist that the two-year separation "would have the real potential to permanently damage [the plaintiffs'] relationship," and that of the medical doctor to the effect that the separation would "indeed represent an undue hardship and be detrimental to his physical and mental well being." A.R. 33, 34.

Considering these statements in conjunction with other concerns raised by plaintiffs,[4] we are unable to conclude that the INS officials devoted more than conclusory attention to problems associated with the "choice" of temporary separation available to plaintiffs. The record leaves the reviewing court with the distinct sense that INS accorded undue weight to its conclusion, unsupported by evidence, that plaintiffs were aware that the two-year residence requirement would apply to them. On the present record we can only conclude that INS failed to consider, as it must, the "totality of circumstances" germane to the waiver determination. *See Slyper,* 576 F.Supp. at 560; *Ramos v. INS,* 695 F.2d 181, 189 (5th Cir.1983).

Courts have recognized that the "exceptional hardship" standard must be stringently construed lest the waiver exception swallow the salutary two-year residence rule. *See Slyper,* 576 F.Supp. at 561. We do not disagree. Forceful application of the standard also guards against attempts by applicants to manufacture hardships in order to come within its terms. *Chen v. Attorney General,* 546 F.Supp. at 1065.

There is no evidence in this case, however, of a "sham marriage[s]" consummated "in order to evade the immigration laws," *id.,* or of hardships otherwise fabricated by the applicants. Given the plaintiffs' persuasive showing of hardship and their reliance on official (albeit incorrect) advice by INS officials, we conclude that the agency's decision is arbitrary, capricious, and lacking in evidentiary support. In our opinion, it is an abuse of discretion.

For the foregoing reasons, it is by the court this 16th day of December, 1987

ORDERED that plaintiffs' motion for summary judgment is hereby granted, and it is

ORDERED that defendant's motion for summary judgment is hereby denied, and it is

FURTHER ORDERED that this case is remanded to the Attorney General for proceedings not inconsistent with this opinion.

---

**4.** Plaintiffs emphasized, *inter alia,* the social ostracism and even physical violence facing interracial couples in Korea; Na's own brief history of psychological treatment; and the difficulties facing Huck if forced to leave his parents, and in particular his father, who had recently suffered a heart attack.