**Samuel A. DINA, Plaintiff-Appellant,**

v.

**ATTORNEY GENERAL OF the UNITED STATES and Director of the United States Information Agency, Defendants-Appellees.**

No. 1008, Docket 85–6300.

United States Court of Appeals,
Second Circuit.

Argued March 31, 1986.

Decided June 17, 1986.

474

Oakes, Circuit Judge, concurred and filed an opinion.

Ronald W. Freeman, P.C., New York City, for plaintiff-appellant.

Noel Anne Ferris, Sp. Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Michael Patrick, Sp. Asst. U.S. Atty., Jane E. Booth, Asst. U.S. Atty., Joseph A. Blundon, Asst. Gen. Counsel, Carol B. Epstein, Atty.-Adviser, U.S. Information Agency, of counsel), for defendants-appellees.

Before OAKES, NEWMAN and WINTER, Circuit Judges.

PER CURIAM:

Samuel A. Dina, a Nigerian citizen, appeals from the grant of summary judgment for the Government by the United States District Court for the Northern District of New York, Neal P. McCurn, Judge, 616 F.Supp. 718 (N.D.N.Y.1985).

Dina entered the United States in September 1978 as an exchange student with a "J–1" visa. He married a United States citizen; he and his spouse have a child who is a United States citizen. A J–1 visa holder is ordinarily required, upon completion of his studies, to return to his home country for at least two years before he is eligible to apply for permanent residence in the United States, 8 U.S.C. § 1182(e) (1982). However,

> upon the favorable recommendation of the Director of the United States Information Agency, pursuant to the request of an interested United States Government agency, or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), ... the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United

States is found by the Attorney General to be in the public interest. *Id.* On November 17, 1981, appellant applied for a waiver of the two-year residency requirement. The District Director of the Immigration and Naturalization Service ("INS") in Buffalo, who as a district director is delegated, under 8 C.F.R. § 103.-1(n) (1986), the Attorney General's authority "to grant or deny any application or petition submitted to the Service," found that appellant's departure would cause exceptional hardship to his spouse, but denied the requested waiver on the ground that the United States Information Agency ("USIA") did not make a favorable recommendation on waiver. Subsequent to the birth of his child, Dina moved for reconsideration of his waiver application. After some procedural irregularities, the district director again received a negative recommendation from USIA, and affirmed his denial of the waiver application.

Dina claims that the statute empowers the district director to grant the waiver regardless of the USIA's unfavorable recommendation and that the USIA abused its discretion by relying solely on the recommendation of the United States Agency for International Development ("AID") that a waiver not be granted and by not articulating reasons for its denial. He also claims that AID abused its discretion by failing to consider hardship and deferring entirely to the Nigerian government's policy that all exchange students sponsored by the organization that sponsored Dina's studies are required to return home.

Notwithstanding cases finding the statute clear, *e.g., El-Omrani v. Director, United States Information Agency,* 638 F.Supp. 430, 431 (W.D.Pa. 1986), section 1182(e) is drafted so awkwardly that it is totally ambiguous at to whether the favorable recommendation of the USIA is *required* for the Attorney General to grant the waiver, or whether the recommendation of the Commissioner of Immigration and Naturalization will do as well. *Silverman v. Rogers,* 437 F.2d 102 (1st Cir.1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1667, 29 L.Ed.2d 149 (1971), noted this ambiguity, *id.* at 105, and looked to legislative history to conclude that a waiver could not be obtained without the positive recommendation of the Secretary of State (who under the earlier version of section 1182(e) addressed in *Silverman* performed the function now fulfilled by the USIA). We agree. The obscure language in section 1182(e) was inserted into the statute as part of section 109 of the Act of Sept. 21, 1961, Pub.L. No. 87–256, 75 Stat. 527, 534–35. According to Conf.Rep. No. 1197, 87th Cong., 1st Sess., *reprinted in* 1961 U.S. Code Cong. & Ad.News 2759, 2775, 2780, section 109 "reenacted and amplified" the Act of June 4, 1956, ch. 356, 70 Stat. 241. With regard to the two-year home residency requirement, the 1956 statute provided that, "upon request of an interested Government agency *and* the recommendation of the Secretary of State, the Attorney General may waive such two-year period of residence abroad in the case of any alien...." (emphasis added). This language makes plain that the positive recommendation of the Secretary was necessary to obtain waiver under the previous statute. As *Silverman* pointed out, the legislative history of current section 1182(e) indicates that no change of prior law was intended with respect to this matter. The Conference Report noted that section 109 accomplished "one modification" of the earlier statute, one not pertinent here, Conf. Rep. No. 1197, *reprinted in* 1961 U.S.Code Cong. & Ad.News at 2780; H.Rep. No. 1094, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Ad.News 2759, 2774, noted that section 109 "contains one important change in existing law," again one not apropos of the issue raised on this appeal. The court in *Silverman* also noted that it was the express intent of the subcommittee that drafted the bill that fewer hardship waivers be granted, and stated that, given that purpose, "it would have been illogical to *reduce* the number of agencies wielding a veto." *Id.* at 107 (emphasis in original).

We find the *Silverman* analysis persuasive and conclude that the district court properly held that, without the positive recommendation of the USIA, the district director had no power to grant the waiver. We do note that the USIA, responding to an INS inquiry, spoke in terms that were only recommendatory rather than power-assumptive; the response stated, "The U.S. Information Agency recommends denial. We would appreciate being informed of your final decision." Nonetheless, we believe a waiver cannot be granted where the USIA has not made a positive recommendation.

Dina claims that the USIA and AID abused their discretion in denying a recommendation of waiver. He first claims that AID abused its discretion by not considering the particular hardships to his wife and child and by deferring to the Nigerian government. However, AID is not a party to this action. Nor does the statute require AID to act in any particular manner. Dina states conclusorily that anything USIA is required to do, AID is also required to do, but we see no basis for this assertion. In the course of USIA's decision-making process, it may consult any number of agencies. Those agencies are not automatically placed in USIA's shoes simply by virtue of having been consulted.

With respect to Dina's claim that USIA abused its discretion, the Government first argues that the USIA's decision not to recommend waiver is not subject to judicial review. It bases this claim on 5 U.S.C. § 701(a)(2) (1982), which provides that the Administrative Procedure Act applies to administrative action "except to the extent that ... agency action is committed to agency discretion by law." As the Government reminds us, *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), indeed held that where a decision is committed to agency discretion, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 1655. The Government also relies on *Abdelhamid v. Ilchert*, 774 F.2d 1447 (9th Cir.1985), where the Ninth Circuit held in a case virtually identical to this one that the district court had no subject matter jurisdiction over a claim that the USIA director abused his discretion by failing to make a favorable waiver recommendation. The court held that that determination was "committed to agency discretion by law" and, under 5 U.S.C. § 701(a)(2), was not subject to judicial review.

We agree with the Ninth Circuit's holding that this determination is isolated entirely from judicial review. While "[t]he general exception to reviewability provided by § 701(a)(2) for action 'committed to agency discretion' remains a narrow one," 105 S.Ct. at 1659 (citation omitted), it applies in this case. The USIA's statutory authorization contained in 8 U.S.C. § 1182(e) is entirely bereft of any guiding principles by which the USIA's action may subsequently be judged. And while regulations govern the submission to the USIA, *see* 22 C.F.R. § 514.31(b)(2) (1985) (requiring that "a summary of the details of the expected hardship" be submitted to the agency's Waiver Review Branch); 22 C.F.R. § 514.32 (1985) (providing that "[u]pon receipt of a request for a recommendation of waiver ... the Director will review the policy, program, and foreign relations aspects of the case and will transmit a recommendation to the Attorney General for decision"), none offers adequate guidance to make review for abuse of discretion possible where the USIA has in fact considered the required factors on the required record. Given the fact that foreign policy concerns are integrally involved in waiver decisions, agency discretion in this area should be broad.

As Professor Davis's treatise points out, action "probably is never totally unreviewable," because it is still reviewable for fraud, absence of jurisdiction, or unconstitutionality. 5 K. Davis, *Administrative Law Treatise* § 28.2 at 257 (2d ed. 1984). We make no suggestion that we would not have jurisdiction over a claim that the USIA had committed fraud or based its

decision on consideration of constitutionally impermissible factors. We hold only that our jurisdiction to review for abuse of discretion is limited where, as here, a statute and its accompanying regulations governing agency action in the foreign policy area provide no constraint on agency action.

Dina's claim that the USIA gave inadequate explanation of its reasons for failing to recommend waiver necessarily fails as a consequence of our finding of lack of jurisdiction. Since our review is severely limited, it is hard to see what the authority would be for requiring a more particularized statement of reasons.

Judgment affirmed.

OAKES, Circuit Judge (concurring):

While language in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), could be read to suggest that section 701(a)(2) precludes review in a wide range of cases, *Heckler v. Chaney* itself holds only that an agency's refusal to take enforcement action is presumptively unreviewable under § 701(a)(2) where Congress has provided no guidelines for exercise of enforcement discretion. The "general unsuitability for judicial review of agency decisions to refuse enforcement," 105 S.Ct. at 1656, arises because failure to act is hard to review; by contrast, "when an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner." *Id.* (emphasis in original). In this case, regulations circumscribe the way in which the agency reviews waiver requests: 22 C.F.R. § 514.31(b)(2) (1985) requires that "a summary of the details of the expected hardship" be submitted to the agency's Waiver Review Branch; 22 C.F.R. § 514.32 (1985) provides that "[u]pon receipt of a request for a recommendation of waiver ... the Director will review the policy, program, and foreign relations aspects of the case and will transmit a recommendation to the Attorney General for decision." These regulations provide adequate guidance to make review for abuse of discretion possible. Consequent-

ly, I would find that *Heckler v. Chaney* does not preclude judicial review of agency action in this case and would assume jurisdiction but recognize that the scope of our review for abuse of discretion is limited where, as here, a statute and its accompanying regulations constrain agency action only minimally.

Appellant's first claim that the USIA relied entirely on AID's determination in making its recommendation has surface appeal. The first denial by the USIA, issued in August, 1983, might be susceptible to that interpretation—it suggested that USIA relied solely on AID's recommendations, which in turn apparently rested entirely on "the policy of Nigeria that all participants in programs sponsored by the Federal Ministry of Education must return to Nigeria upon program completion." Because the statute envisions that hardship waivers may be granted even in the face of objections by the home country, *see* section 1182(e) (waiver may be granted where there is hardship to alien's spouse or child or where alien would be subject to persecution or where home country has no objection), denying a waiver recommendation on the sole basis that the home country disapproves might under some circumstances be an abuse of discretion. However, I would not decide whether the USIA abused its discretion the first time it considered Dina's waiver, because on his motion to reopen and reconsider, the USIA's denial read as follows:

Aid [*sic*] has advised that the Government of Nigeria maintains its request that Mr. Dina return home. AID also continues to recommend against a waiver in order to preserve the integrity of the exchange program. After careful reconsideration of Mr. Dina's file, USIA finds that the hardship as determined does not outweigh the policy, program, and foreign relations aspects of the case.

While not specific, the determination reflects that the particular hardships to this appellant were reviewed, that AID's recommendation with respect to the integrity of the exchange program was considered, and

that the USIA took account of foreign policy concerns and found against recommending a waiver. Thus I do not think the denial indicates that USIA relied entirely on AID's recommendation.

Dina's last claim is that the USIA gave inadequate explanation of its reasons for failing to recommend waiver. While a more particularized statement of reasons would be desirable, there seems no basis for requiring it since our review is so severely limited. Broad agency discretion is appropriate since waiver decisions necessarily reflect foreign policy concerns. *Cf. Dorszynski v. United States*, 418 U.S. 424, 441–42, 94 S.Ct. 3042, 3051–52, 41 L.Ed.2d 855 (1974) (Court refused to require that a statement of supporting reasons accompany a sentencing judge's finding that a youth offender would derive "no benefit" from a Federal Youth Corrections Act sentence; only purpose of such a requirement would be to limit trial court's sentencing discretion). With one exception, the cases Dina cites as requiring a statement of reasons where a claim of hardship is rejected involve immigration judges or the Board of Immigration Appeals, both of which act as adjudicatory bodies, not as agencies using their foreign affairs expertise to exercise a discretionary function.

The exception is *Keh Tong Chen v. Attorney General*, 546 F.Supp. 1060 (D.D.C. 1982), in which the court overturned the INS Regional Commissioner's affirmance of the district director's denial of a hardship waiver, that denial being based on the ground that exceptional hardship had not been shown. The court there held that, given the interest in maintaining the family unit, "a finding of 'no exceptional hardship' should not be affirmed unless the reasons for this finding are made clear." *Id.* at 1064 (citation omitted). In *Chen*, however, whether exceptional hardship was present depended solely on the facts of that particular case. By contrast, here the USIA was required to make a determination based not only on Dina's family situation, but on broader concerns regarding foreign policy and the future of the exchange program. A narrower inquiry is therefore proper.

Having been satisfied by the USIA's statement of reasons that it balanced the conflicting concerns, I think further elaboration of the reasons USIA struck the balance it did is unnecessary and therefore concur.