Joseph Patrick Thomas **DOHERTY,**
Petitioner-Appellant,

v.

Edwin **MEESE,** Attorney General of the United States, Alan C. Nelson, Commissioner of the Immigration and Naturalization Service, and Charles Sava, District Director of the Immigration and Naturalization Service, New York District, Respondents-Appellees.

No. 415, Docket 86–2335.

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1986.

Decided Dec. 23, 1986.

Stephen A. Somerstein, New York City (Somerstein & Pike, New York City, of counsel), for petitioner-appellant.

Lawrence W. Chamblee, Sp. Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., Steven E. Obus, Asst. U.S. Atty., S.D.N.Y., of counsel), for respondents-appellees.

Before FEINBERG, Chief Judge, and WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

Joseph Patrick Thomas Doherty, a citizen of the United Kingdom and the Republic of Ireland, appeals from Judge Leisure's denial of his petition for writ of habeas corpus. Doherty seeks relief from his incarceration pursuant to a warrant of the Immigration and Naturalization Service ("INS"). He claims that the Attorney General and the INS have improperly delayed deportation to the country of his choice in order to ensure his continued availability for extradition under a new treaty between the United States and the United Kingdom. We affirm.

## BACKGROUND

Doherty was convicted in the United Kingdom of murdering a British Army captain and was sentenced to life imprisonment. On June 10, 1981, Doherty escaped from prison and fled to the United States, where he was arrested pursuant to a deportation warrant on June 18, 1983. Ten days later, a warrant was issued for his arrest for extradition. On December 12, 1984, Judge Sprizzo denied the government's request for extradition on the ground that Doherty's offense was within the "political offense exception" of the existing extradition treaty between the United States and the United Kingdom of Great Britain and Northern Ireland, Treaty of Extradition, October 21, 1976, United States-United Kingdom, art. V, para. 1(c)(i), 28 U.S.T. 227, T.I.A.S. No. 8468. *See Matter of Doherty*, 599 F.Supp. 270 (S.D.N.Y.1984). Because Judge Sprizzo's denial of extradition was unappealable, *see United States v. Doherty*, 786 F.2d 491, 495 (2d Cir.1986), and vacated the extradition warrant, Doherty was returned to the custody of the INS pursuant to the deportation warrant.

After the denial of extradition, Doherty sought release from INS custody. At a hearing on December 21, 1984, an immigra-

tion judge granted Doherty a bond in the amount of $200,000. On appeal, the Board of Immigration Appeals ("BIA") overturned that determination on the ground that no amount of bond would reasonably assure Doherty's presence at future proceedings. As a result, Doherty has been detained continuously since his arrest in 1983.

In early 1985, the government filed a declaratory judgment action in the Southern District seeking collateral review of Judge Sprizzo's order denying extradition. Doherty then moved for a stay of his deportation proceedings pending the outcome of the declaratory judgment action. On May 6, 1985, an immigration judge granted that motion over the objection of the INS. On June 25, 1985, Judge Haight dismissed the government's declaratory judgment action for failure to state a claim for relief. *United States v. Doherty*, 615 F.Supp. 755 (S.D.N.Y.1985). We affirmed that dismissal on March 13, 1986, 786 F.2d 491 (2d Cir.1986), and denied a petition for rehearing on June 2, 1986.

After the government failed to file a petition for writ of certiorari within the prescribed ninety days, 28 U.S.C. § 2101(c) (1982), Doherty advised Immigration Judge Cohen that he wished to consent to deportation and to withdraw his application[s] for discretionary relief from deportation. Doherty designated the Republic of Ireland as the country of deportation under 8 U.S.C. § 1253(a) (1982). Doherty faces a ten-year sentence of imprisonment in that country based on a dual prosecution agreement between the Republic of Ireland and the United Kingdom.

Doherty's demand for immediate deportation to Ireland was a consequence of the Supplementary Extradition Treaty between the United States and the United Kingdom, Treaty Doc. 99–8, that was signed on June 25, 1985. The United States Senate has since ratified the treaty; the British House of Commons had not yet acted upon it at the time of oral argument. Under the treaty, the "political offense exception" relied upon by Judge Sprizzo to prevent extradition would be eliminated retroactively, allowing Doherty's extradition to the United Kingdom, where he faces a life sentence. Doherty thus urgently wants to leave the United States for Ireland, where he faces only a ten-year sentence, before the British House of Commons acts upon the treaty.

The INS opposed Doherty's designation on the ground that deportation to Ireland would be prejudicial to the interests of the United States, and designated the United Kingdom as the country of deportation. At a hearing on September 12, 1986, Doherty admitted that he was deportable because he had entered the United States without valid immigration documents. 8 U.S.C. §§ 1251(a)(1), 1182(a)(20) (1982). However, Doherty neither conceded that he was deportable on various grounds relating to his murder conviction in the United Kingdom and to his participation in the Provisional Irish Republican Army ("PIRA")[1] nor admitted the facts relating to those charges. Judge Cohen, concluding that Doherty's limited admissions were sufficient to require his deportation, would not allow the INS to introduce evidence relevant to these additional charges.

At a reconvened hearing on September 19, 1986, the INS argued that Doherty's deportation to the Republic of Ireland would be prejudicial to the interests of the United States in its relations with other nations concerning the fight against inter-

---

**1.** The additional charges were that Doherty was deportable under 8 U.S.C. § 1251(a)(1) (1982) because at the time of his entry he had been excludable on the grounds that (1) he had been convicted of a crime of moral turpitude, *id.* § 1182(a)(9); (2) he had been convicted of two crimes with an aggregate sentence of five years or more, *id.* § 1182(a)(10); (3) he had entered the United States for the purpose of engaging "in activities which would be prejudicial to the public interest, or [would] endanger the welfare, safety, or security of the United States," *id.* § 1182(a)(27); and (4) he was an alien who advocates "the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers ... of the Government of the United States or of any other organized government, because of his or their official character," *id.* § 1182(a)(28)(F)(ii).

national terrorism. Judge Cohen rejected this argument and ordered Doherty's deportation to the Republic of Ireland, which had indicated that it would accept him. On September 26, 1986, the INS appealed Judge Cohen's decision to the BIA, claiming, *inter alia*, that the conclusion that Doherty's deportation to Ireland would not adversely affect the interests of the United States was reached on an incomplete record.

Meanwhile, on September 23, 1986, Doherty petitioned in the Southern District for a writ of habeas corpus releasing him and allowing immediate deportation to Ireland. Judge Leisure denied Doherty's petition on September 25, and Doherty now appeals that decision.

## DISCUSSION

Doherty claims that the INS and the Attorney General have resisted his deportation to Ireland solely for the purpose of assuring his continued availability for extradition to the United Kingdom under the Supplementary Treaty. Doherty asks us to order the respondents to execute the order of deportation entered by Immigration Judge Cohen. We find no merit in his claim and affirm.

We note at the outset that until September 3, 1986, the delay in Doherty's deportation proceedings was solely the result of his own tactical decision. For the almost eighteen months from March 18, 1985 to September 3, 1986, his deportation proceedings were held in abeyance because of a stay entered on his motion and opposed by the INS. Even if a delay of this length might justify relief, therefore, it is of no aid to Doherty because he was its sole cause.

Our analysis of Doherty's claim begins with the power of the Attorney General and his agents to reject Doherty's designation of Ireland as the country of deportation. Doherty concedes, as he must, that the Attorney General can reject an alien's designation of a country of deportation on the ground that deportation to that country would be prejudicial to the interests of the United States. Section 243 of the Immigration and Nationality Act, 8 U.S.C. § 1253(a), explicitly provides:

[t]he deportation of an alien in the United States provided for in this chapter ... shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, *unless the Attorney General, in his discretion,* concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation....

(emphasis added). The implied corollary to the Attorney General's power to reject a designated country is the power to name the country to which the alien shall be deported,[2] subject of course to that country's willingness to accept the alien.

Doherty asks us not only to declare invalid the Attorney General's rejection of his designation but also to interrupt the ongoing administrative process concerning that rejection.[3] Judge Cohen agreed with

2. Because Doherty is a citizen of the United Kingdom, designation of that country is clearly appropriate.

3. Doherty argues that the lack of any administrative precedent for this case renders the INS's appeal baseless and frivolous. He asserts that "[n]ever before in the history of the Immigration and Nationality Act has the Attorney General opposed the designation by a deportee of the country to which he or she wished to be deported on the basis that deportation of the alien would be prejudicial to the interests of the United States." Brief for Petitioner-Appellant, at 23. Moreover, he claims, "There is no basis in any precedential decision of the BIA to support the proposition that the government is entitled to prove each and every allegation of fact and lodged charge contained in an order to show cause." *Id.* at 28. We disagree. The lack of precedent hardly renders the government's position frivolous. On the contrary, the novelty of the issues raised makes this case a particularly inappropriate occasion for judicial intervention in the administrative process. Any determination that is made by the Attorney General's agents charged with conducting the administrative process, or ultimately by the Attorney General himself, can only assist judicial review of

Doherty on the legal merits, or lack thereof, of the Attorney General's actions, but the INS appeal from Judge Cohen to the BIA is pending. In considering this appeal, the BIA is empowered to "exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case." 8 C.F.R. § 3.1(d)(1) (1986). After the BIA determination, the case might ultimately be referred to the Attorney General at his request, at the request of the Chairman or a majority of the BIA, or at the request of the Commissioner of the INS. 8 C.F.R. § 3.1(h) (1986). By his petition for writ of habeas corpus, Doherty seeks to interrupt this process on the ground that the appeal to the BIA is frivolous.

■ Our power to intervene in the administrative process prior to a final order of deportation is extremely limited. Under the Immigration and Nationality Act, we can review determinations of the Attorney General "concerning detention" only "upon a conclusive showing ... that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien" to determine deportability or to effect the alien's departure from the United States within the prescribed six-month period. 8 U.S.C. § 1252(a), (c) (1982). Given that the delay to date has been largely due to the stay obtained by Doherty and that the Attorney General's exercise of his power to reject the designation was timely, no such "conclusive showing" has been made here. We have also held, however, that these provisions of the Act did not "restrict the power of judicial review theretofore existing." *United States ex rel. Belfrage v. Shaughnessy,* 212 F.2d 128, 129 (2d Cir.1954); *see also United States ex rel. Yaris v. Esperdy,* 202 F.2d 109, 112 (2d Cir.1953). Thus, we may also review the Attorney General's decision to detain Doherty pending the INS appeal to the Board "on 'a clear and convincing showing that the decision against him was without a reasonable foundation.'" *Shaughnessy,* 212 F.2d at 129 (quoting *United States ex rel. Potash v. District Director,* 169 F.2d 747, 751 (2d Cir.1948)). We must, however, refrain from intervening in the administrative process if there is "any basis in fact for the agency's decision." *United States ex rel. Barbour v. District Director,* 491 F.2d 573, 578 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); *Bartholomeu v. District Director,* 487 F.Supp. 315, 321 (D.Md.1980). Although these cases speak of detention in the face of an adverse initial administrative decision, they surely also apply to a detention pending an INS appeal from a decision favorable to an alien.

The issue, therefore, is whether there is any reasonable foundation at all for the Attorney General's actions. We have jurisdiction to intervene only if the Attorney General is clearly outside the discretion granted to him by Section 1253(a) in rejecting the Republic of Ireland and designating the United Kingdom and is clearly unreasonable in pressing his position through the administrative process.

We believe it abundantly clear that the appeal to the BIA is not without reason. The Attorney General's rejection of Doherty's designation of the Republic of Ireland posed two questions before Judge Cohen. The first was whether there was cause to believe that Doherty was a PIRA terrorist. The second was whether, assuming Doherty to be a terrorist, the Attorney General might reasonably conclude that deportation to the Republic of Ireland would be prejudicial to United States interests.

■ With regard to the first question, Judge Cohen denied the INS an opportunity to establish the facts relating to Doherty's PIRA activities and based the finding of no prejudice to United States interests solely on the facts conceded by Doherty. The Attorney General's power to reject the alien's designation under Section 1253(a), however, at the very least arguably allows the INS to present evidence relating to a

Doherty's claims, or may obviate the need for      such review.

deportable alien that implicates national interests. Any other conclusion would allow an alien to compel deportation to the country of his choice, regardless of prejudice to the interests of the United States, simply by conceding the minimum facts necessary to establish deportability. Such a reading of Section 1253(a) would, we think, effectively negate the Attorney General's power to reject an alien's designation. This ground of appeal is, therefore, hardly meritless.

■ Regarding the second question and assuming Doherty to be a terrorist, the conclusion that the interests of the United States would be prejudiced by Doherty's deportation to the Republic of Ireland cannot be considered unreasonable by a court. The power granted to the Attorney General by Section 1253(a) allows him, "in his discretion, [to conclude] that deportation to [the designated] country would be prejudicial to the interests of the United States." Such a decision must be based on an analysis of the impact of a particular deportation on United States' interests viewed as a whole by a politically responsible official. There are no statutory guidelines regarding what quality or quantity of prejudice to United States interests is necessary, or even what constitutes "interests." The requisite judgment requires an essentially political determination. This is underlined by the fact that such a judgment inevitably affects United States relations with other nations. As the Supreme Court has held,

> any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.

*Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89, 72 S.Ct. 512, 518–19, 96 L.Ed. 586 (1952) (footnote omitted); *see also Bertrand v. Sava*, 684 F.2d 204, 211–12 (2d Cir.1982).

The interests of the United States at issue in the present matter demonstrate the nexus between the Attorney General's discretion under Section 1253(a) and the conduct of foreign relations. The decision whether to deport Doherty affects not only the relations of the United States with the United Kingdom and the Republic of Ireland, but also the complicated multilateral negotiations concerning efforts to halt international terrorism. The pertinent portion of Section 1253(a) is "drawn so that a court would have no meaningful standard against which to judge [the Attorney General's] exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

This result follows *a fortiori* from our recent decision in *Dina v. Attorney General*, 793 F.2d 473 (2d Cir.1986) (per curiam). In *Dina*, we held that the denial by the United States Information Agency ("USIA") of a recommendation of waiver of the two-year residency requirement under 8 U.S.C. § 1182(e) (1982) was not the subject of judicial review. The statute provided only that "upon the favorable recommendation of the Director of the [USIA], ... the Attorney General may waive the [two-year] requirement ... in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest." 8 U.S.C. § 1182(e). We noted that the USIA's statutory authorization was "entirely bereft of any guiding principles by which the USIA's action may subsequently be judged," and that "[g]iven the fact that foreign policy concerns are integrally involved in waiver decisions, agency discretion in this area should be broad." 793 F.2d at 476. Moreover, the applicable regulations required the USIA Director only to "review the policy, program, and foreign relations aspects of the case," 22 C.F.R. § 514.32 (1985), and thus offered no guidance for review. Consequently, we held that "our jurisdiction to review for abuse of discretion is limited where, as here, a statute and its accompanying regulations governing agency action in the foreign policy area provide no constraint on agency action." 793 F.2d at 477.

In the present case, the statutory grant of discretion is equally bereft of guiding principles. More important, the foreign policy implications in a case such as this are far greater than in *Dina*, which involved only a waiver of the requirement that an exchange student spend two years in his home country before applying for permanent residence in the United States. Consequently, apart from claims such as "fraud, absence of jurisdiction, or unconstitutionality," *id.* at 476 (citing 5 K. Davis, *Administrative Law Treatise* § 28:2 at 257 (2d ed. 1984)), the determination of the Attorney General is essentially unreviewable.[4]

█ Doherty also claims that the Attorney General's actions violate his due process rights as an attempt to achieve extradition through the mechanism of Section 1253(a) in the absence of an applicable extradition treaty. We disagree. The Attorney General's power under Section 1253(a) can be exercised independently. Designation of the United Kingdom as the country of deportation, assuming it is upheld in the administrative process, is thus not the equivalent of extradition. Moreover, there is no substantive due process right not to be deported. *See Linnas v. INS,* 790 F.2d 1024, 1031 (2d Cir.1986).

Accordingly, we affirm the decision of the district court dismissing Doherty's petition for writ of habeas corpus.

---

**4.** Because Doherty asks us to intervene in the administrative proceedings before the INS has been allowed to introduce evidence of his PIRA activities, we must assume the claims of the INS about those activities to be true, and we need not address issues concerning the scope of our review of factual findings concerning those activities.