Gail WHITAKER, Plaintiff,

v.

CLEMENTON HOUSING AUTHORITY, and the Department of Housing and Urban Development, Defendants.

Civ. No. 90–4979.

United States District Court, D. New Jersey.

March 25, 1992.

Sonia Bell, Camden Regional Legal Services, Camden, N.J., for plaintiff.

Louis J. Bizzarri, Asst. U.S. Atty., Camden, N.J., for defendant, Dept. of Housing and Urban Development.

## OPINION

GERRY, Chief Judge.

Plaintiff, Gail Whitaker, brings this action against the Clementon Housing Authority and the United States Department of Housing and Urban Development ("HUD") alleging statutory and constitutional violations in connection with her termination from the section 8 low income housing program of the United States Housing Act of 1937, 42 U.S.C. § 1437. The case is presently before the court on defendant-HUD's motion for summary judgment. HUD argues first that this court lacks jurisdiction to review HUD's action with respect to plaintiff, because it involves a matter "committed to agency discretion by law" and is therefore exempt from judicial review under § 701(a) of the Administrative Procedures Act ("APA"). Secondly, HUD argues that even if its action is subject to judicial review, it must be upheld under § 706 of the APA as it was not arbitrary and capricious nor an abuse of discretion. For the reasons set forth below, defendant's motion will be denied.

## I. FACTUAL BACKGROUND [1]

Plaintiff, Gail Whitaker, and her six year old son, Kevin, are tenants at Ashley Court Apartments, a privately owned and operated apartment complex in Clementon, New Jersey. At the outset of her tenancy, Ms. Whitaker obtained a section 8 certificate from the Clementon Housing Authority, which acts as an agent for HUD in administering the federal section 8 housing program in the town of Clementon. Under the program, eligible low income tenants pay only 30% of their income toward rent; the remaining portion of the rent is paid by the Housing Authority (with HUD funds) to the private landlord. Ashley Court Apartments agreed to participate in the program and entered into the necessary contracts and leases with Ms. Whitaker and the Housing Authority, which included provisions stating that the parties were bound by applicable federal law and regulations. Such regulations include a requirement that section 8 leases and contracts need not be renewed annually, but will continue automatically on a month to month bases unless the certificate holder's tenancy has been terminated for good cause in a state court eviction proceeding. Ms. Whitaker's lease began on October 1, 1988.

On July 26, 1989, Ashley Court Apartments informed Ms. Whitaker that they would not renew her lease because she had failed to respond to a previous letter sent regarding renewal, which plaintiff asserts she did not receive. Clementon Housing Authority then advised Ms. Whitaker by

---

**1.** These facts are taken from the allegations in the complaint, which HUD has conceded as true for purposes of this motion.

letter dated July 28, 1989, that if she wanted to continue receiving section 8 assistance, she must contact them by August 5, 1989. Ms. Whitaker attempted to contact the Housing Authority but was unsuccessful until September 7, 1989, when she informed them that she wished to remain at Ashley Court Apartments and to continue participating in the section 8 program. The Housing Authority told her that she would have to move by September 30, 1989, and it stopped making rental assistance payments on her behalf as of that date. She was subsequently removed from the section 8 program and her slot was filled by some one on the waiting list.[2] Although federal regulations require local housing authorities to give written notice of a decision to terminate assistance under the section 8 program, including notification of the participant's right to request an informal hearing prior to the termination, *see* 24 C.F.R. 882.216(b)(1)(ii), (b)(3)(i), and (b)(4), no such notice or opportunity for a hearing was afforded to Ms. Whitaker.

Ashley Court Apartments then demanded the full rent of $365.00 a month, which Ms. Whitaker could not afford to pay, and on January 19, 1990, the landlord obtained a Judgment for Possession against her for non-payment of rent. Ms. Whitaker asserts that she has since made diligent efforts to find another apartment that she can afford without the section 8 subsidy but has been unsuccessful. Ms. Whitaker has made several requests of HUD, asking that the agency intervene on her behalf to correct the Clementon Housing Authority's noncompliance with federal regulations, but HUD has stated that it will not take any action because of Ms. Whitaker's ongoing litigation against the Housing Authority.

In this action plaintiff challenges HUD's failure to ensure the Housing Authority's compliance with federal law and requests declaratory relief as well as an injunction,

either 1) ordering HUD to directly provide plaintiff with a section 8 certificate and to pay rental subsidy benefits retroactive to October 1, 1989; or 2) ordering HUD to compel the Clementon Housing Authority to reinstate plaintiff's section 8 certificate and pay rental subsidy benefits retroactive to October 1, 1989.[3]

## II. DISCUSSION

Summary judgment is appropriate only where all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See, e.g., Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). With respect to HUD's contention that this court lacks subject matter jurisdiction, there do not appear to be any issues of material fact in dispute. Because we find HUD's contention to be incorrect as a matter of law, however, we decline to grant summary judgment on this ground. With respect to HUD's contention that its action should be upheld on the merits under § 706 of the APA, we find that there are disputed issues of material fact, and thus deny HUD's motion for summary judgment on that ground as well.

### A. *Subject Matter Jurisdiction Under the APA, § 701(a)*

 HUD argues that its decision in this case not to take enforcement action against the Clementon Housing Authority was one "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a) of the Administrative Procedures Act and therefore not subject to judicial review. A matter is committed to agency discretion where the statute is drawn so that the court would have no meaningful standard against which to judge the agen-

---

2. The supply of section 8 certificates is limited and the waiting list is extremely long.

3. The complaint also includes claims against the Clementon Housing Authority that are not directly at issue here. Plaintiff claims that the Authority's actions were "inequitable and in

contravention of its lawful duties and obligations," and she also brings a § 1983 claim against the Authority alleging violation of her rights under the due process clause and federal regulations, 24 C.F.R. 882.215(b) & (c).

cy's decision. *See Heckler v. Chaney*, 470 U.S. 821, 834, 105 S.Ct. 1649, 1657, 84 L.Ed.2d 714 (1985). This exemption from judicial review under the APA is narrow and applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is not law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Thus, there is generally a presumption in favor of the reviewability of agency action.

■ In *Heckler v. Chaney*, however, the Supreme Court held that this presumption is reversed where agency decisions not to take enforcement action are at issue. Because such decisions not to enforce have been traditionally committed to the agency's absolute discretion and are generally unsuitable for judicial review, the presumption is that they are *not* reviewable. *See Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656. This presumption can be rebutted, however, "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.*, at 833, 105 S.Ct. at 1656.

Exactly how this presumption of non-reviewability differs analytically from the usual presumption of reviewability is not entirely clear. Certainly under both presumptions, agency action is reviewable where the substantive statute provides judicially manageable standards and not reviewable where the statute does not provide such standards. The D.C. Circuit has interpreted *Chaney*'s reversal of the presumption to mean that whenever agency decisions not to take enforcement action are at issue, an "extra degree of substantive guidance" is needed in order to find them fit for judicial review. *Robbins v. Reagan*, 780 F.2d 37, 44 (D.C.Cir.1985). The Third Circuit, however, seems to read *Chaney* much more narrowly.

> *Chaney* does not stand for the proposition that section 701(a)(2) precludes judicial review in a large number of cases. *Moreover, we believe that Chaney did not change the presumption of reviewability of agency action under the APA.* *Chaney* merely held that when Congress does not provide guidelines for the exercise of enforcement discretion, an agency's refusal to institute proceedings is presumptively unreviewable under § 701(a)(2).

*Chong v. Director, U.S. Information Agency*, 821 F.2d 171, 175 n. 3 (3d Cir.1987) (emphasis added).

■ Here, there is no question that the statute itself does not provide guidelines for HUD to follow in overseeing and monitoring the administration of the section 8 program by local housing authorities, but plaintiff has asked us to look beyond the statute to rules promulgated by HUD itself—in the form of a handbook—in order to find judicially manageable standards by which to judge HUD's action. Clearly, in cases that do not involve refusals to enforce, rules and policy statements promulgated by the agency itself may provide such standards. "[O]nce an agency has declared that a given course is the most effective way of implementing a statutory scheme [through the promulgation of regulations or announcement of policies], the courts are entitled to closely examine agency action that departs from this stated policy." *Robbins*, 780 F.2d at 45 Handbooks issued by HUD, in particular, have been held to be binding on the agency where they contain sufficiently mandatory language. *See Burroughs v. Hills*, 564 F.Supp. 1007, 1015 (N.D.Ill.1983), *aff'd*, 741 F.2d 1525 (7th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985); *Estrada v. Hills*, 401 F.Supp. 429, 437 (N.D.Ill.1975).

The question of whether this rationale applies with equal force where agency decisions not to enforce are concerned was explicitly left open by the Supreme Court in *Chaney*, *see* 470 U.S. at 836, 105 S.Ct. at 1658, and has not been definitively answered by the Third Circuit. *See Harmon Cove Condominium Ass'n v. Marsh*, 815 F.2d 949, 952 n. 2 (3d Cir.1987). We see no reason, however, why the same rationale does not serve to make agency rules and policies an appropriate source for judicially manageable standards in this context as well. Although agency refusals to enforce

are generally unsuited to judicial review because they involve considerations peculiarly within the agency's expertise, *see Chaney*, 470 U.S. at 831, 105 S.Ct. at 1655, where the agency itself has already weighed those considerations so as to arrive at a rule or policy, it seems fair and appropriate for the court to measure the agency's action (or inaction) against its own stated rule.

This holding seems consistent with the Third Circuit's general hesitancy, expressed in *Chong* as noted above, to accord broad scope to *Chaney*'s presumption of non-reviewability. *See Chong*, 821 F.2d at 175 n. 3. The specific holding in *Chong* lends some support to our holding as well. In that case, the Third Circuit found regulations promulgated by the agency itself to provide adequate standards to guide judicial review. *See id.* at 176. While *Chong* did not specifically involve an agency's refusal to enforce, it did involve a refusal to act—in particular, a refusal by a federal agency to recommend that the plaintiff be exempted from certain immigration requirements. Since the Supreme Court's reasoning in *Chaney* rested to a large extent on the unsuitability for judicial review of agency failures to act in general, the *Chong* holding has substantial relevance here. *See Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656; *Dina v. Attorney General of the U.S.*, 793 F.2d 473, 477 (2d Cir.1986) (Oakes, J., Concurring Opinion—endorsed by the Third Circuit in *Chong*, 821 F.2d at 175, n. 3) ("[t]he general unsuitability for judicial review of agency decisions to refuse enforcement [noted in *Chaney* ] arises because failure to act is hard to review"). Accordingly, we will consider HUD's handbook an appropriate source for judicially manageable standards against which to judge HUD's enforcement decision. We now turn to an examination of that handbook to determine whether it in fact contains such standards.

■ HUD's handbook 7420.3 at chapter 5 provides guidelines for HUD's review and monitoring of local public housing authority's ("PHA's") administration of the section 8 program, including a specific requirements for a comprehensive review to be conducted every two years. *See* Handbook 7420.3, chapter 5–3. Two provisions of the handbook indicate that HUD regional offices are required to take affirmative corrective action when a violation of law is brought to their attention. The first states that:

> The Assisted Housing Management Branch (AHMB) [of the HUD regional field office] is responsible for monitoring PHA administration of the Existing Housing Program after Annual Contributions Contract (ACC) [4] execution. *This includes ... assuring that necessary corrective actions pertaining to PHA operations are taken.*

Handbook 7420.3, chapter 5–1 (emphasis added). The second states:

> If the Field Office finds evidence of "intentional" program abuse (fraud) or "unintentional" administrative errors (mistakes) by the PHA or by its participating owners or families, the Field Office must require the PHA to take the follow-up actions prescribed in Paragraphs 9–11 and 9–12 of Handbook 7420.7.

Handbook 7420.3, chapter 5–8(b). Paragraph 9–12 mandates that "if there is evidence of program abuse, the PHA must take administrative actions to correct the abuse."

HUD argues that these provisions only apply to the biennial reviews of local housing authorities and do not require HUD to take any particular action when complaints regarding wrongful terminations are brought to their attention outside the context of one of these reviews. It does appear that the second provision quoted refers specifically to the biennial reviews. The quoted provision is a section of subchapter 5–8, which provides that HUD officials "must follow up on corrective actions at the end of the period specified in the letter"—the "letter" referring to a letter

---

**4.** The ACC is the contract between HUD and the local housing authority regarding the adminis- tration of the section 8 program.

and report that are to be sent by HUD to the local housing authority after completion of each periodic review. *See* subchapter 5–7. The first quoted provision, however, appears at the very beginning of chapter 5 (entitled, "Review of PHA Activities, Approval of Financial Documents, and Monitoring PHA Leasing") at subchapter 5–1, well before any mention of the biennial review requirement.[5] Its reference to corrective action is therefore most logically viewed as a general instruction, not limited to the context of those reviews. Additionally, the use of the word "monitoring" indicates an ongoing oversight responsibility rather than a periodic review. Thus, we find that subchapter 5–1 of Handbook 7420.3 imposes an ongoing obligation on HUD to assure that necessary corrective actions pertaining to PHA operations are taken outside as well as within the context of the biennial reviews required by subchapter 5–3.

The next question we face is whether this handbook provision sufficiently circumscribes HUD's enforcement discretion so as to provide the judicially manageable standards necessary to overcome the *Chaney* presumption of non-reviewability. At the outset, we note that we do not view the *Chaney* presumption to present a particularly high hurdle to plaintiff in this case for two reasons. First, as we noted above, the Third Circuit appears to generally view the barrier to reviewability erected by *Chaney* as minimal. Secondly, a close examination of the analysis that led to the Supreme Court's holding in *Chaney* reveals that the considerations that supported the Court's conclusion there—that agency decisions not

to take enforcement action are generally unsuited to judicial review—point far less compellingly toward that holding under the particular facts of this case.

The Supreme Court provided several rationale in *Chaney* for its reluctance to allow judicial review of agency refusals to take enforcement action. First, such decisions often involve a balancing of factors and an ordering of priorities that is peculiarly within the agency's expertise, such as determining the best use of limited resources, whether enforcement action is likely to be successful, and whether such action best fits the agency's overall policies. HUD's decision not to take enforcement action in this case, however, appears not to have been based on consideration of such factors at all. Rather, the letters written to plaintiff's counsel by HUD officials in response to her requests for assistance indicate that the decision not to enforce in this instance was based solely on the fact that the plaintiff had initiated litigation against the Housing Authority. Thus, HUD's refusal to enforce effectively penalized the plaintiff for bringing suit to secure her rights under the section 8 program. HUD not only failed to take enforcement action itself, it discouraged plaintiff from seeking enforcement of her rights elsewhere. To the extent that this reflects a general policy "consciously and expressly adopted" by HUD that can be viewed as "so extreme as to amount to an abdication of [HUD's] statutory responsibilities,"[6] then HUD's decision in this matter is of a type that was specifically excluded from the scope of the *Chaney* holding by the Supreme Court.[7]

---

5. The requirement of periodic biennial reviews is first mentioned at subchapter 5–3.

6. HUD's statutory responsibilities are defined in part by the National Housing Policy, 42 U.S.C. § 1441, which sets as a goal "a decent home and suitable living environment for every American family." The D.C. Circuit and others have held that this language is not merely precatory, but binding on HUD. *Commonwealth of Pennsylvania v. Lynn,* 501 F.2d 848, 855 (D.C.Cir.1974) ("Action taken [by HUD] without consideration of [the national housing goals] or in conflict with them will not stand"); *United States v. Occi,* 758 F.2d 1160 (7th Cir.1985) (holding that

national housing goals provide sufficient law to apply to take certain decisions by HUD out of the APA's "committed to agency discretion" exemption from judicial review); *United States v. Victory Highway Village,* 662 F.2d 488, 494 (8th Cir.1981) (same); *see also Shannon v. HUD,* 436 F.2d 809, 819 (3d Cir.1970).

7. *See Chaney,* 470 U.S. at 833, n. 4, 105 S.Ct. at 1656, n. 4. ("We do not have in this case ... a situation where it could justifiably be found that the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory respon-

Secondly, the *Chaney* holding was based partly on a distinction between action and inaction and an assumption that an agency's failure to take action is less culpable and less susceptible to judgment than its actions. The court reasoned that a failure to act is generally more difficult to review than an affirmative act, the latter "provid[ing] a focus for judicial review inasmuch as the agency must have exercised its power in some manner." *Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656. This distinction is far less compelling, however, in situations such as this, where affirmative agency action has created the situation from which plaintiff now seeks relief through agency enforcement action. HUD's decision not to enforce plaintiff's rights in this instance did not amount to a refusal to gratuitously intervene to protect plaintiff from some danger it had no part in creating. *Cf. DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989) (due process clause imposes no affirmative duty on government officials to act where state played no part in creating the dangers faced by plaintiff). Rather, in this instance, HUD affirmatively created the section 8 program and put the Clementon Housing Authority in charge of administering it, thus playing an active role in the creation of the situation plaintiff now faces.[8] *Cf. Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982) ("If the [government] puts a man in a position of danger ... and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snakepit").

The third rationale relied on by the Court in *Chaney* was the observation that an agency's refusal to take enforcement action is like a prosecutor's decision not to indict, in that it generally does not result in the exercise of "coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656. We find this rationale far less compelling in this instance where the agency's refusal to act may cause the plaintiff to lose what is perhaps the most fundamental and sacred property right, her home; and where that loss is occasioned by government's active removal of a benefit to which plaintiff claims entitlement without providing basic due process.

Thus, although we are dealing with a decision not to take enforcement action, we view the *Chaney* presumption of nonreviewability as weaker here than it might be under different facts or in a different circuit. In *Chong* the Third Circuit found that the following regulation constituted a sufficient constraint of the agency's discretion to allow for judicial review:

> upon receipt of a request for a recommendation of waiver ... the Director [of the U.S. Information Agency] will review the policy, program, and foreign relations aspects of the case and will transmit a recommendation to the Attorney General for decision.

*Chong*, 821 F.2d at 176, *quoting* 22 C.F.R. § 514.32 (1986). We find the directive in the HUD handbook that HUD "assure that necessary corrective actions ... are taken" to be a significantly clearer constraint on agency discretion. By requiring HUD to "assure" that corrective actions are taken, it imposes on HUD an affirmative duty with respect to monitoring local housing authorities' compliance with law; HUD therefore does not have absolute discretion in deciding whether to take enforcement action against local housing authorities. Accordingly, we hold that the HUD handbook does create judicially manageable standards by which to judge HUD's action in this case.

sibilities. *See e.g. Adams v. Richardson*, 480 F.2d 1159 (D.C.Cir.1973) (el banc)").

**8.** In *Chaney*, in contrast, the Food and Drug Administration had played no part in creating the danger it was asked to step in and prevent: the use of certain drugs for execution by lethal injection. The FDA had not authorized or otherwise taken action to cause the use of the drugs for that purpose by the states.

**B.** *The Merits of HUD's Action under § 706 of the APA*

■ Under § 706 of the APA, a court may compel or set aside agency action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Agency action will be upheld where the agency can articulate a "rational connection between the facts found and the choice made," *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962), or, in other words, where the court finds that "the reasons for the agency's decisions were legally permissible and reasoned ones, and [where] there was adequate factual support for the decision." *Center for Auto Safety v. Dole*, 828 F.2d 799, 809–10 (D.C.Cir.1987), *vacated on other grounds*, 846 F.2d 1532 (D.C.Cir.1988). We also bear in mind that the substantive standard against which we are to measure the rationality of HUD's action is the Handbook requirement that HUD "assure that necessary corrective actions pertaining to [housing authority] operations are taken." Handbook 7420.3, chapter 5–1.

HUD argues that its decision not to take enforcement action in this case was rational and legally permissible, because it would be impracticable for HUD to become involved in every dispute between a tenant and a local housing authority in light of HUD's limited staff and the vast number of local housing authorities responsible for administering the section 8 program. Indeed, HUD argues that its involvement in this dispute would be irrational and a waste of resources because it would result in three levels of review before a section 8 subsidy could be terminated. First, the local housing authority would conduct an informal hearing pursuant to 24 C.F.R. 882.216(b)(1)(ii). Second, HUD would have to hold a hearing to review evidence and possibly make credibility determinations based on oral testimony. And finally, there would be judicial review in this court.

In an apparent attempt to exaggerate the time and resources that would have to be expended by HUD in order to take enforcement action in a case such as this,

HUD has muddied the distinction between two separate disputes involved in this lawsuit. The underlying basis of this lawsuit is the dispute over whether or not Ms. Whitaker was entitled to continue to receive section 8 benefits after September 30, 1989. This dispute would have been the subject of the informal hearing by the Clementon Housing Authority had it complied with 24 C.F.R. 882.216(b) and resolution of it may very well have required a substantial review of evidence, including credibility determinations based on oral testimony. This is not, however, the dispute that HUD has been asked to adjudicate. HUD has only been asked to ensure that the Housing Authority comply with the procedural requirements imposed by federal regulation in resolving that underlying dispute.

Thus, plaintiff is not asking HUD to inject itself as a third level of review regarding the merits of the underlying dispute. Rather, HUD is being asked to make a separate procedural determination which, contrary to HUD's assertion, would not require extensive examination of evidence or consideration of oral testimony. 24 C.F.R. 882.216(b)(3)(i) requires that a local housing authority provide a tenant with written notice of its decision to terminate benefits and of the tenant's right to a hearing prior to such termination. A simple review of the housing authority's file would reveal whether or not such a notice had been sent. If, as plaintiff asserts, no notice was sent, a clear violation of federal law exists.

Thus, it appears from the record before us that only minimal resources would have been necessary in order for HUD to take corrective action in this case. Plaintiff does not claim that HUD was obligated to investigate and seek out this violation, rather, it was explicitly brought to the attention of HUD officials. Additionally, what plaintiff complains of here is a clear cut procedural violation, the existence of which can be determined through minimal effort by HUD officials. Assuming that plaintiff's assertion that no notice was sent is correct—and HUD has certainly presented no evidence to contradict this assertion—a cursory examination of the file

would have revealed the existence of a clear cut violation federal regulations.[9] Indeed, according to a letter from HUD official, Encarnacion Loukatos, submitted by plaintiff on this motion,[10] HUD did review the Clementon Housing Authority's file. If that is true, then the only additional expenditure of resources by HUD that would have been necessary in order to assure that corrective action was taken may well have been a simple phone call to the Housing Authority.

Thus, we find little support in the record presently before us for HUD's argument that its decision not to take enforcement action was based on a desire to conserve limited resources. Indeed, plaintiff has presented evidence, as yet undisputed by HUD, which tends to show that HUD's decision was not based on a concern for limited resources at all. The record contains two letters from HUD officials to plaintiff's counsel which both indicate that the sole reason for HUD's decision not to take enforcement action was the fact that plaintiff had filed suit against the Clementon Housing Authority.[11] This fact is at best an irrelevant consideration and at worst a legally impermissible one on which to base the decision not to take enforcement action. In either case, HUD has clearly failed to articulate any "rational connection" between the fact of plaintiff's suit against the housing authority and HUD's decision not to take enforcement action. *Burlington*, 371 U.S. at 168, 83 S.Ct. at 246.

Therefore, on the record before us, we find that there clearly exist disputed issues of material fact regarding the basis for HUD's decision in this matter, and thus, the issue of whether HUD's action should be set aside or upheld under § 706 of the APA cannot at this juncture be determined

by the court. Defendant's motion for summary judgment will accordingly be denied.

---

**9.** Counsel for HUD admitted at oral argument that in the face of a "clear cut violation" of law, HUD would be required to take enforcement action.

**10.** *See* Plaintiff's Brief in Opposition, exhibit C.

**11.** *See* Plaintiff's Brief in Opposition, Exhibit C ("we do not feel it is appropriate for us to issue

any decision regarding which party was right or wrong in light of the pending litigation"), and Exhibit E ("Our legal counsel has advised us that we can not become involved in this case, as it is a litigated case between the tenant and the Authority").